**Opinion issued August 3, 2017**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-16-00260-CR**

———————————

**SAMMIE CASTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 209th District Court**
**Harris County, Texas**
**Trial Court Case No. 1319352**

---

# O P I N I O N

A jury convicted appellant, Sammie Caston, of the first-degree felony offense

of continuous sexual abuse of a child and assessed his punishment at confinement

for life.[1]  In two issues, appellant contends that (1) Code of Criminal Procedure article 38.37, section 2(b), which permits the introduction of evidence of a defendant's extraneous bad acts involving children other than the complainant in the charged case, violates due process and is unconstitutional, and (2) the State failed to present sufficient evidence that he was at least seventeen years old at the time of the charged offense.

We affirm.

## Background

### A.    *Factual Background*

L.J. first met appellant when she was twelve or thirteen and appellant was around fifteen, and they started dating.  They drifted apart, and L.J. had four children with another man, including the complainant T.H., who was born in 2003.  L.J. and appellant reconnected in 2010, and they started dating again.  Appellant moved in with L.J. and her children, and they lived in two different apartments during the time they were dating—the first on North Houston Rosslyn Road and the second on West Sunforest.  L.J. testified that they moved to the West Sunforest address in December 2010.  The apartment on West Sunforest had two bedrooms: L.J.'s children shared the master bedroom, and L.J. and appellant shared the smaller bedroom.  The

---

[1]    *See* TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2016).

2

apartment had one bathroom, which had entrances from the hall and the master bedroom.

On the evening of March 6, 2011, L.J. was sitting at her computer while one of her sons and T.H., who was eight years old at the time, were asleep in their bedroom. Appellant announced that he was going to use the restroom. When he had not returned to the living room after about forty-five minutes, L.J. began to feel as though something was not right and she got up to investigate. Standing in the hallway, L.J. could see the shadow of feet moving from the children's bedroom into the bathroom. L.J. knocked on the bathroom door and called appellant's name, but he did not answer. L.J. knelt down and looked under the bathroom door, and she could see appellant's slippers sitting perfectly still in front of the toilet. L.J. started banging on the door, and when appellant finally answered, he was sitting on the toilet. L.J. questioned him about why he did not answer when she called his name and told him that she had seen him walking from the children's bedroom into the bathroom. Appellant told L.J. that he had been in the bedroom because T.H. had had a bad dream. L.J. did not believe appellant, but she decided to wait and talk to T.H. before she accused him of anything.

The next morning, L.J. drove T.H. and her son to school. Her son got out of the car and headed into the building, but when T.H. started to climb out, L.J. asked her to stay inside. L.J. drove around the corner, parked her car, and told T.H. that

she felt uncomfortable about some things that had happened the previous night. L.J. asked T.H. if appellant had ever touched her in an inappropriate way, and T.H. started crying and said that appellant had been inappropriately touching her. T.H. told L.J. that appellant had taken her into the closet of the master bedroom, undressed her, and touched her vagina with his fingers and his mouth. T.H. also said that appellant had told her that "he would have to wait until she [got] a little bit older because she was too tight."

L.J. contacted the police that day, and she also took T.H. to be examined at Texas Children's Hospital. The trial court admitted a copy of T.H.'s medical records. These records reflected that appellant lived with L.J. and T.H., that he was born in 1977, and that he was L.J.'s "live-in boyfriend of 6 months." T.H. reported to medical personnel that on the night before, appellant had "touched her private with his hand and tried to get on top of her." She also reported that appellant had "forced her to perform oral sex on him and tried to put his private in her private on multiple occasions[,] and it ha[d] been going on since he moved in with [her] mother."

T.H. was thirteen years old at the time of appellant's trial. T.H. testified that appellant abused her on more than one occasion, and she described three specific instances. She testified that, on one occasion, appellant woke her up, took her into her closet, and started touching her vagina with his fingers. Appellant told her that

4

she "was too tight down there, so he [had] to wait until [she got] older." On another occasion, T.H. was in her mother's bedroom looking for a phone charger when she found a picture of a woman performing oral sex on a man. When appellant came into the room, T.H. asked him what the people in the picture were doing, and he said, "I'll show you." Appellant then forced T.H. to perform oral sex on him. T.H. also testified that when her family was living in a different apartment, appellant came into the bedroom where she was sleeping with two of her siblings and attempted to have anal intercourse with her. T.H. could not provide specific dates for when each of these acts occurred, nor could she state how much time passed between each act, other than to say that they occurred on different days and they started when appellant moved in with her family.

## B.    *Admission of Extraneous Sexual Offense*

Pursuant to Code of Criminal Procedure article 38.37, section 2(b), the State sought to introduce evidence during the guilt-innocence phase that appellant had also sexually abused his daughter, S.C., who was twelve years old at the time of appellant's trial. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b) (West Supp. 2016). Article 38.37, section 2(b) provides that, in trials for certain offenses including continuous sexual abuse of a child, notwithstanding Rule of Evidence 404, evidence that the defendant has committed a separate sexual offense against a child other than the complainant in the charged case may be admitted "for any bearing the

evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *Id.* Defense counsel objected to any evidence admitted under this statute, arguing that the statute violated due process and due course of law guarantees and that any testimony concerning an extraneous offense against S.C. also violated Rule of Evidence 403.

As required by the statute, the trial court held a hearing to determine whether the evidence likely to be admitted at trial concerning this separate offense against S.C. would be adequate to support a jury finding that the defendant committed the separate offense beyond a reasonable doubt. *See id.* art. 38.37, § 2-a. The trial court heard testimony from S.C. and her mother, N.M., and made a finding on the record that testimony concerning appellant's alleged abuse of S.C. was admissible under article 38.37, section 2.

Before the jury, N.M. testified that she started dating appellant in 1997 or 1998 and they had two children together, including twelve-year-old S.C. She stated that appellant was born on June 13, 1977, and that he was around twenty-five years old when S.C. was born in 2003. N.M. testified that appellant's defense counsel contacted her in 2013—two years after appellant was arrested for abusing T.H.— and asked if S.C. would testify as a witness in support of appellant. N.M. discussed this with S.C., who informed her that she could not testify in appellant's favor because he "had raped her, too."

6

S.C. testified that appellant touched her inappropriately on more than one occasion and that the abuse occurred when she was between the ages of seven and ten. S.C. testified that, late at night, when her mother and younger brother were asleep in another bed in the room, appellant would climb in bed with her and touch her vagina, both over and under her clothes. She remembered that appellant did this on four occasions over different periods of time. S.C. stated that appellant abused her on other occasions, but she could not remember all the times that it happened. She did not tell anyone about what appellant had done to her until her mother asked her if she wanted to testify in favor of appellant in the charged case.

Ultimately, the jury found appellant guilty of committing continuous sexual abuse of T.H., and it assessed his punishment at confinement for life. This appeal followed.

## Sufficiency of Evidence

In his second issue, appellant contends that the State failed to present sufficient evidence that he was at least seventeen years old at the time of the charged offense, as required by statute.

### A. *Standard of Review*

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt.

7

*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016). The jurors are the exclusive judges of the facts and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to the jury's credibility determinations. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011) (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

### B.    *Continuous Sexual Abuse of Child*

To establish that appellant committed the offense of continuous sexual abuse of a child, the State was required to prove that appellant, during a period of time thirty or more days in duration, committed at least two acts of sexual abuse against T.H., a child younger than fourteen years of age, while he was at least seventeen

years of age at the time of each of the acts. *See* TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2016). An "act of sexual abuse" is defined as including an act that constitutes the offense of aggravated sexual assault and an act that constitutes the offense of indecency with a child. *See id.* § 21.02(c)(2), (4). Acts that constitute the offense of aggravated sexual assault include intentionally or knowingly causing the penetration of the anus or sexual organ of a child by any means and intentionally or knowingly causing the penetration of a child's mouth by the actor's sexual organ. *See id.* § 22.021(a)(1)(B)(i)–(ii) (West Supp. 2016). A person commits the offense of indecency with a child if the person engages in sexual contact with the child, which is defined as including "any touching . . . of the anus, breast, or any part of the genitals of a child" if committed with the intent to arouse or gratify the sexual desire of any person. *See id.* § 21.11(a), (c)(1) (West 2011).

On appeal, appellant challenges the sufficiency of the evidence with regard to one element of the offense: whether he was at least seventeen years of age at the time of each of the acts of sexual abuse committed against T.H.

N.M., who had two children with appellant, including twelve-year-old S.C., testified that she met and started dating appellant in 1997 or 1998 and that they were together for seven or eight years. She also testified that appellant's birthdate was June 13, 1977. She agreed with the prosecutor that their daughter S.C. was born in 2003 and that appellant would have been around twenty-five at that time.

9

L.J. testified that she first met appellant when they were teenagers, and she estimated that she was thirteen and appellant was fifteen when they met. She stated that they were in a relationship when they were teenagers, but they drifted apart and it was not "until [their] adulthood life that [they] met back up." L.J. testified that appellant moved in with her when they began dating again sometime in 2010, that they first lived in an apartment on North Houston Rosslyn Road, and that they moved into a different apartment on West Sunforest in December 2010. She stated they were living on West Sunforest when T.H. made her outcry in March 2011.

The trial court admitted T.H.'s hospital records from Texas Children's Hospital. These records, made on March 7, 2011, reflected that T.H.'s birthdate was January 7, 2003. The records also reflected that appellant lived in her household, that he was T.H.'s "[m]other's live-in boyfriend of 6 months," and that his birthdate was September 12, 1977.[2] T.H. reported to the examining physician that the sexual abuse had "been going on since [appellant] moved in with [T.H.'s] mother." At trial, T.H. did not provide specific dates concerning when the abuse occurred. However, she testified that appellant abused her more than once, that she was eight years old when he abused her, and that acts of abuse had occurred in two different apartments.

---

[2] Although the records contains conflicting evidence concerning appellant's birthdate, with N.M. testifying that appellant's birthday was June 13 and T.H.'s hospital record reflecting that appellant's birthday was September 12, there was no conflicting evidence concerning appellant's birth year of 1977.

The State presented evidence that appellant was born in 1977 and that he abused T.H. in 2010 and 2011, when he was approximately thirty-three years old. We therefore conclude that a rational jury could have concluded that the State proved, beyond a reasonable doubt, that appellant was at least seventeen years old each time he committed an act of sexual abuse against T.H. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Morgan*, 501 S.W.3d at 89; *see also* TEX. PENAL CODE ANN. § 21.02(b)(2). We hold that the State presented sufficient evidence to support appellant's conviction for continuous sexual abuse of a child.

We overrule appellant's second issue.

### Constitutionality of Article 38.37, Section 2(b)

In his first issue, appellant contends that Code of Criminal Procedure article 38.37, section 2(b) is unconstitutional because it permits, in trials of certain sexual offenses, the admission of evidence that the defendant has committed separate extraneous offenses against children other than the complainant of the charged case for purposes including the defendant's character and acts performed in conformity with that character. Specifically, he argues that section 2(b) violates the due process clause of the United States Constitution.[3] He also argues that the evidence admitted

---

[3] Appellant also argues that section 2(b) violates the due course of law clause of the Texas Constitution, and Code of Criminal Procedure article 1.04, which statutorily codifies the due course of law clause. *See* TEX. CONST. art. I, § 19 ("No citizen of this State shall be deprived of . . . liberty . . . except by the due course of the law of the land."); TEX. CODE CRIM. PROC. ANN. art. 1.04 (West 2005) (providing same).

11

under this section at trial should have been excluded under Rule of Evidence 403 as more prejudicial than probative.

## A.    *Whether Section 2(b) Violates Due Process Guarantees*

In determining the constitutionality of a statute, we presume that the statute is valid and that the Legislature did not act unreasonably or arbitrarily in enacting it. *Harris v. State*, 475 S.W.3d 395, 399 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).   The appellant bears the burden of establishing that the statute is unconstitutional.  *Id.*

The due process clause requires the State to prove every element of a charged crime beyond a reasonable doubt.  *Id.* (citing *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011)); *Belcher v. State*, 474 S.W.3d 840, 843 (Tex. App.—Tyler 2015, no pet.).  Generally, the State must try an accused only for the charged offense and may not try the accused for a collateral crime or for being a criminal generally. *Harris*, 475 S.W.3d at 399; *see also* TEX. R. EVID. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").  "The essential guarantee of the Due Process Clause is that the government may not

Appellant does not, however, provide any separate argument for why section 2(b) violates these particular state provisions, in addition to the federal due process clause, and he states that for the purposes of his appellate brief, he "consider[s] the scope of these protections to be the same."  We therefore analyze only whether section 2(b) violates the federal due process clause.

12

imprison or otherwise physically restrain a person except in accordance with fair procedures." *Harris*, 475 S.W.3d at 399. "To establish a due process violation, it is the appellant's burden to show that the challenged statute or rule violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions and which define the community's sense of fair play and decency.'" *Belcher*, 474 S.W.3d at 844 (quoting *Dowling v. United States*, 493 U.S. 342, 353, 110 S. Ct. 668, 674 (1990)).

Code of Criminal Procedure article 38.37, section 1, applicable in cases in which the defendant is charged with continuous sexual abuse of a child, provides that, notwithstanding Rule of Evidence 404, evidence that the defendant has committed other crimes, wrongs, or acts against the child who is the victim of the charged offense shall be admitted for its bearing on relevant matters including (1) the state of mind of the defendant and the child and (2) the previous and subsequent relationship between the defendant and the child. TEX. CODE CRIM. PROC. ANN. art. 38.37, § 1(b). In 2013, the Texas Legislature amended article 38.37 to add sections 2 and 2-a. Section 2 provides that in trials for certain sexual offenses, including continuous sexual abuse of a child:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) [including an offense of indecency with a child] may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) [including a trial for continuous sexual abuse] for any bearing the evidence has on

13

relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

*Id.* art 38.37, § 2(b); *see also Belcher*, 474 S.W.3d at 844 (noting that section 2(b) allows admission of evidence that defendant has committed certain sexual offenses against children who are not complainants of charged offense).  Section 2-a provides a procedural safeguard and requires:

> Before evidence described by Section 2 may be introduced, the trial judge must:
>
> (1)    determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt; and
>
> (2)    conduct a hearing out of the presence of the jury for that purpose.

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a.  The State must give notice of its intent to introduce article 38.37 evidence in its case in chief not later than the thirtieth day before trial.  *Id.* § 3.

The Court of Criminal Appeals has not addressed the constitutionality of section 2(b).  However, several of the intermediate courts of appeals, including this Court, have addressed constitutional challenges to this statute and have uniformly found that section 2(b) is constitutional.  *See, e.g.*, *Buxton v. State*, No. 01-15-00857-CR, 2017 WL 2872490, at *14–17 (Tex. App.—Houston [1st Dist.] July 6, 2017, no pet. h.); *Bezerra v. State*, 485 S.W.3d 133, 139–40 (Tex. App.—Amarillo 2016, pet. ref'd); *Robisheaux v. State*, 483 S.W.3d 205, 213 (Tex. App.—Austin 2016, pet. ref'd); *Harris*, 475 S.W.3d at 403; *Belcher*, 474 S.W.3d at 847; *see also Baez v.*

14

*State*, 486 S.W.3d 592, 599–600 (Tex. App.—San Antonio 2015, pet. ref'd) (holding that section 2(b) does not violate ex post facto provision of United States Constitution); *Alvarez v. State*, 491 S.W.3d 362, 367–70 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (holding that defendant failed to preserve due process challenge to section 2(b), but noting that all Texas cases "addressing the constitutionality of Article 38.37 have held that it is constitutional").

Appellant argues that he has a substantive due process right to a trial free from admission of the character propensity evidence that section 2(b) specifically permits. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b) (providing that evidence of separate sexual offense may be admitted "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant"). In determining whether section 2(b) violates due process, our sister courts have considered analogous provisions in the Federal Rules of Evidence. *See Harris*, 475 S.W.3d at 401 (noting that, in enacting section 2(b), Texas Legislature recognized that statute would "bring the Texas Rules of Evidence closer to the Federal Rules of Evidence, specifically Federal Rule 413(a), which allows evidence of previous sexual assault cases to be admitted at trial"). Federal Rule of Evidence 413, for example, provides that "[i]n a criminal case in which a defendant is accused of sexual assault, the court may admit evidence that the defendant committed any other sexual assault" and that "[t]he

evidence may be considered on any matter to which it is relevant." FED. R. EVID. 413(a); *see also* FED. R. EVID. 414(a) ("In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant."); *United States v. Foley*, 740 F.3d 1079, 1086 (7th Cir. 2014) ("Evidence that tends to show that a criminal defendant has a propensity to commit crimes ordinarily is excluded from trial, but Rule 413 makes an exception where past sexual offenses are introduced in sexual assault cases.").

Federal courts addressing the constitutionality of Rules 413 and 414 have upheld the rules and determined that the rules do not violate due process guarantees. In *United States v. Enjady*, the Tenth Circuit, considering arguments similar to those that appellant makes here—specifically, that the longstanding historical practice of excluding character propensity evidence elevates that exclusion to a due process right—noted "[t]hat the practice is ancient does not mean it is embodied in the Constitution" and that "[m]any procedural practices—including evidentiary rules— that have long existed have been changed without being held unconstitutional." 134 F.3d 1427, 1432 (10th Cir. 1998). The *Enjady* court held that when it considered Rule 413 in conjunction with the safeguards of Rule 403, which provides for the exclusion of evidence that is more prejudicial than probative, Rule 413 was "not unconstitutional on its face as a violation of the Due Process Clause." *Id.* at 1433;

*see also United States v. LeMay*, 260 F.3d 1018, 1026 (9th Cir. 2001) ("We conclude that there is nothing fundamentally unfair about the allowance of propensity evidence under Rule 414. As long as the protections of Rule 403 remain in place to ensure that potentially devastating evidence of little probative value will not reach the jury, the right to a fair trial remains adequately safeguarded."). In *United States v. Mound*, the Eighth Circuit held that Rule 413 is constitutional and stated that is "within Congress's power to create exceptions to the longstanding practice of excluding prior-bad-acts evidence." 149 F.3d 799, 801 (8th Cir. 1998).

In addressing the constitutionality of section 2(b) in *Belcher*, the Tyler Court of Appeals noted that child sexual abuse cases present unique evidentiary concerns, in that "the prosecution typically must rely on the largely uncorroborated testimony of the child victim" and therefore "the child's credibility becomes the focal issue." 474 S.W.3d at 845. The Fourteenth Court has stated that Section 2(b) evidence is, "by definition, propensity or character evidence" and that the statute was enacted to "give prosecutors additional resources to prosecute sex crimes committed against children," noting that "[c]hildren often are targeted for these crimes, in part because they tend to make poor witnesses." *Harris*, 475 S.W.3d at 402 (quoting Senate Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 12, 83rd Leg., R.S. (2013)).

The Court of Criminal Appeals has also recognized the unique nature of these types of cases, stating that "[s]exual assault cases are frequently 'he said, she said'

17

trials in which the jury must reach a unanimous verdict based solely upon two diametrically different versions of an event, unaided by any physical, scientific, or other corroborative evidence." *Hammer v. State*, 296 S.W.3d 555, 561–62 (Tex. Crim. App. 2009); *see also Jenkins v. State*, 993 S.W.2d 133, 136 (Tex. App.—Tyler 1999, pet. ref'd) (stating, in case challenging constitutionality of article 38.37, section 1, that "[t]he special circumstances surrounding the sexual assault of a child victim outweigh normal concerns associated with evidence of extraneous acts").

In determining that section 2(b) does not violate the due process clause, courts have emphasized that the procedural safeguards present in the statute itself, as well as the protections of Rule 403, are adequate to ensure that a defendant receives a fair trial. Section 2-a requires that, before evidence may be introduced pursuant to section 2(b), the trial court must hold a hearing outside the presence of the jury and determine that the evidence likely to be admitted at trial will be adequate to support a jury finding that the defendant committed the separate offense beyond a reasonable doubt. TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a; *see also Buxton*, 2017 WL 2872490, at *16 n.4 (noting that Federal Rules 413 and 414, which have been repeatedly held constitutional, do not contain this procedural safeguard). At the hearing, defense counsel has the right to cross-examine any witness. *See Harris*, 475 S.W.3d at 402. The State must give the defendant notice of its intent to introduce article 38.37 evidence not later than the thirtieth day before the defendant's trial.

18

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 3. Furthermore, section 2(b) is still subject to the balancing of probative value and prejudicial effect under Rule 403; thus, the trial court may exclude section 2(b) evidence if it determines, for example, that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *See Belcher*, 474 S.W.3d at 847; *see also LeMay*, 260 F.3d at 1026 (holding that as long as protections of Rule 403 remain in place, right to fair trial remains adequately safeguarded even though Rule 414 allows admission of character propensity evidence).

As our sister court noted in *Harris*, section 2(b) does not lessen a defendant's presumption of innocence, and it does not alter the State's burden of proof "because the State is still required to prove every element of the charged offense beyond a reasonable doubt." 475 S.W.3d at 402; *see also Baez*, 486 S.W.3d at 600 (noting, in context of analysis that section 2(b) is not unconstitutional ex post facto law, that section 2(b) "enlarges the scope of the child's admissible testimony, but leaves untouched the amount or degree of proof required for conviction"); *Dominguez v. State*, 467 S.W.3d 521, 526 (Tex. App.—San Antonio 2015, pet. ref'd) (stating that section 2(b) "neither changes the State's burden of proof to support a conviction for sexual assault of child nor lessens the amount of evidence required to sustain a conviction").

We therefore reaffirm this Court's holding in *Buxton* that section 2(b) does not violate the due process clause and is constitutional.  *See* 2017 WL 2872490, at *17; *Bezerra*, 485 S.W.3d at 140; *Robisheaux*, 483 S.W.3d at 213; *Harris*, 475 S.W.3d at 403; *Belcher*, 474 S.W.3d at 847.

**B.      Rule 403**

As noted above, evidence admitted pursuant to section 2(b) is still subject to a Rule 403 analysis.  *See Belcher*, 474 S.W.3d at 847.  Rule 403 provides that a trial court may exclude otherwise relevant evidence if the probative value of that evidence is substantially outweighed by a danger of unfair prejudice, confusion of the issues, the misleading of the jury, undue delay, or the needless presentation of cumulative evidence.  TEX. R. EVID. 403.  When conducting a Rule 403 analysis, the trial court must balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).  Rule 403 favors the admission of relevant evidence, and there is a presumption that relevant evidence will be more probative than prejudicial.  *Bezerra*, 485 S.W.3d at 140

20

(quoting *Booker v. State*, 103 S.W.3d 521, 533 (Tex. App.—Fort Worth 2003, pet. ref'd) (op. on reh'g)); *see also Hammer*, 296 S.W.3d at 568 (stating that Rule 403 "envisions exclusion of evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value'"). A trial court's decision not to exclude evidence under Rule 403 is entitled to deference. *See Wilson v. State*, 473 S.W.3d 889, 899 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). We therefore review a trial court's ruling under Rule 403 for an abuse of discretion. *Pawlak v. State*, 420 S.W.3d 807, 810 (Tex. Crim. App. 2013).

After a hearing outside the presence of the jury, the trial court admitted testimony from N.M. that, after she asked her and appellant's daughter, S.C., whether she wanted to testify in his favor in this case, S.C. disclosed that she could not testify for appellant because he "had raped her, too." S.C. then testified that she remembered four occasions in which appellant climbed into her bed at night while her mother and brother were asleep in another bed in the room and touched her vagina, both over and under her clothes.

Appellant argues that S.C.'s testimony "was not especially probative of any element of the charged offense" of abusing T.H., nor was it probative of his character. However, evidence that a defendant has sexually abused another child is relevant to whether the defendant sexually abused the child-complainant in the charged case. *See Robisheaux*, 483 S.W.3d at 220–21; *Gaytan v. State*, 331 S.W.3d

21

218, 228 (Tex. App.—Austin 2011, pet. ref'd) (holding that evidence that defendant had committed extraneous sexual offenses against two other children was "straightforward and directly relevant to the only issue in the case, namely whether [the defendant] abused [the complainant]"). This Court has held that "[b]ecause the evidence of prior sexual abuse of children 'was especially probative of [the defendant's] propensity to sexually assault children,' the Rule 403 balancing test normally will not favor the exclusion of evidence of the defendant's prior sexual assaults of children." *Alvarez*, 491 S.W.3d at 371 (quoting *Belcher*, 474 S.W.3d at 848). Thus, evidence that appellant sexually abused S.C. is relevant to whether he sexually abused T.H.

In addition, appellant's primary defensive theory at trial was that T.H. had fabricated the allegations of abuse, perhaps at L.J.'s direction, and appellant's defense counsel argued that it was unlikely the abuse occurred as T.H. described it, given the presence of other individuals either in the same room as appellant and T.H. or in a room nearby. However, the evidence that appellant also abused S.C. when other people were present in the room rebuts appellant's defensive theory. *See Distefano v. State*, — S.W.3d —, No. 14-14-00375-CR, 2016 WL 514232, at *3 (Tex. App.—Houston [14th Dist.] Feb. 9, 2016, pet. ref'd) (holding that trial court reasonably could have concluded that "inherent probative force" of extraneous offense evidence was "considerable" because testimony tended to contradict

22

defendant's defensive theory that incident with complainant "was a 'misunderstanding' or 'mistake'").

Furthermore, no medical or physical evidence corroborated T.H.'s testimony, which defense counsel pointed out during closing argument. And although L.J. saw the shadow of footsteps moving from the children's bedroom to the bathroom and appellant gave her an unconvincing explanation for why he was in the children's bedroom, the only witness to the acts of abuse against T.H. was T.H. herself. Without S.C.'s testimony concerning similar acts that appellant committed against her in similar circumstances, "the State's case would have basically come down to" T.H.'s word against appellant's. *See Robisheaux*, 483 S.W.3d at 220. Thus, T.H.'s credibility "was clearly the focal issue in the case." *See Belcher*, 474 S.W.3d at 848 (noting, in holding that admission of extraneous offense evidence did not violate Rule 403, that child-complainant was only eyewitness to offense, no physical evidence supported her allegations, and child's mother initially doubted allegations). We conclude that S.C.'s testimony was relevant, the testimony had considerable probative force, and the State had great need of the evidence.

The evidence that appellant sexually abused another child in addition to the complainant in the charged offense was "clearly prejudicial" to his case, but the question in a Rule 403 analysis is whether the evidence was *unfairly* prejudicial. *See Bradshaw v. State*, 466 S.W.3d 875, 883 (Tex. App.—Texarkana 2015, pet. ref'd)

23

(noting that Rule 403 does not allow exclusion of otherwise relevant evidence when evidence is merely prejudicial); *see also Belcher*, 474 S.W.3d at 848 (stating, "The extraneous offense evidence was highly prejudicial, principally because it was especially probative of [the defendant's] propensity to sexually assault children," and noting that extraneous offense evidence was "more repugnant and inflammatory than the offense alleged against" named complainant, but still holding that trial court did not violate Rule 403 by admitting evidence). Here, S.C.'s testimony "discussed actions that were no more serious than the allegations forming the basis for the indictment." *See Robisheaux*, 483 S.W.3d at 221. Moreover, appellant "does not identify any particular facts" about S.C.'s testimony that make it "uniquely or unfairly prejudicial." *See Alvarez*, 491 S.W.3d at 371. Thus, although S.C.'s testimony was prejudicial to appellant, he has not demonstrated that it was *unfairly* prejudicial. *See Pawlak*, 420 S.W.3d at 811 ("[T]he plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial.").

S.C.'s testimony "was not confusing or technical in nature," and it was relevant to the central issue in the case—whether appellant sexually abused T.H. *See Robisheaux*, 483 S.W.3d at 220–21; *see also Distefano*, 2016 WL 514232, at *4 (holding that trial court reasonably could have concluded that extraneous offense testimony "did not have a tendency to suggest decision on an improper basis or to

confuse or distract the jury from the main issues in the case because the evidence relates directly to an element of the charged offense—that [the defendant] intended to induce [the complainant] to engage in sexual conduct"). Additionally, when S.C. started testifying concerning the acts of abuse committed against her, the trial court gave the jury a limiting instruction that reminded the jury that appellant was on trial "solely on the charge contained in the indictment" and that it could not consider evidence of similar extraneous acts unless it found beyond a reasonable doubt that appellant committed those extraneous acts. The trial court included a substantively identical instruction in the jury charge. We therefore conclude that S.C.'s testimony did not have a tendency to distract the jury from the main issue in the case or to be given undue weight by the jury.

Finally, the jury heard two days' worth of testimony in appellant's trial. Seven witnesses testified, and the reporter's record contains approximately 300 pages of testimony. N.M.'s testimony took up a total of twenty-three pages in the reporter's record, and S.C.'s testimony took up a total of fifty-four pages. Thus, developing the extraneous offense evidence took up approximately one-fourth of the trial. Both parties addressed N.M.'s and S.C.'s testimony during closing arguments; however, the focus remained on L.J.'s and T.H.'s testimony. We therefore conclude that the State did not spend "an inordinate amount of time" developing S.C.'s testimony, and it did not emphasize that testimony over T.H.'s testimony concerning the charged

25

offense. *See Gigliobianco*, 210 S.W.3d at 641–42 (considering, in conducting Rule 403 analysis, likelihood of whether presentation of challenged evidence will consume inordinate amount of time or merely repeat evidence already admitted).

Considering all of the relevant factors, we conclude that the trial court reasonably could have determined that the prejudicial effect of S.C.'s testimony did not substantially outweigh its probative value. We therefore hold that the trial court did not abuse its discretion in admitting S.C.'s testimony concerning the extraneous acts of sexual abuse that appellant committed against her.

We overrule appellant's first issue.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Chief Justice Radack and Justices Keyes and Massengale.

Publish. TEX. R. APP. P. 47.2(b).