

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-19-00296-CR

MANUEL ZUBIA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2016-410,823; Honorable John J. McClendon III, Presiding

March 16, 2021

MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Manuel Zubia, was convicted following a jury trial of indecency, by sexual contact, with a child younger than fourteen years of age, J. G.[1]  On appeal, he asserts that the trial court erred in (1) admitting evidence of prior sexual misconduct by appellant involving his niece, C. S. and (2) overruling his objections to the purported allusion by the State to his failure to testify made during closing argument.  We affirm.

---

[1] We identify complainant and her family members by their initials to protect their identities.  *See* TEX. R. APP. P. 9.8 & cmt.

*Background*

In November 2016, an indictment was filed alleging that appellant intentionally or knowingly engaged in sexual contact with J. G., a child younger than fourteen years of age, by touching her genitals. At trial, J. G. testified that appellant, her grandfather, touched her private area beneath her clothes in her backyard while he was teaching her to shoot a BB gun. While appellant assisted J. G. to aim the gun, he would sometimes squeeze her private area. Other times, he would rub her legs, then squeeze her private area and tell her "good job" after she had fired the BB gun. On the first day of practice, he held her private area or squeezed it twice. He touched her once on the second day and once on the third day for a total of four times. The touching incidents made J. G. feel guilty and she subsequently made an outcry to her grandmother, R. G.

R. G.'s testimony describing J. G.'s outcry was consistent with J. G.'s description of abuse. R. G. also testified that when J. G. told her about the incidents, she was very nervous, embarrassed, and shaky. J. G. told R. G. that when she asked appellant why he was touching her, he laughed.

C. S. testified that when she was fourteen years old,[2] she visited the residence where appellant, his girlfriend, and his girlfriend's son were living. After his girlfriend and her son left the house, C. S. waited for appellant to take her home. While she was sitting on the sofa, appellant approached and began rubbing her legs while laughing and telling her "nothing's going to happen." She attempted to push him away when he tried to get between her legs, but appellant persisted twisting between her legs while he knelt. He was touching her all over in his efforts; however, she testified that the incident happened so fast, she was unsure whether he touched her on her vagina. Ultimately, she kicked

---

[2] At trial, C. S. was thirty-seven years old.

him hard, and he backed off laughing. He then drove her home. She testified that she belatedly came forward because she heard of J. G.'s outcry and believed that appellant's behavior "ha[d] to stop."

Patricia Salazar, a Sexual Assault Nurse Examiner, testified that J. G.'s description of the abuse was consistent throughout her examination. She also testified that her findings were consistent with J. G.'s outcry to R. G.

John Werflein, a forensic interviewer with the Children Advocacy Center for the South Plains, also interviewed J. G. He testified that J. G.'s description of the abuse was consistent throughout the interview. Appellant's cross-examination of Salazar and Werflein primarily focused on whether J. G. was credible and the incident was fabricated. At the trial's conclusion, the jury convicted appellant of indecency with a child younger than fourteen years of age by sexual contact and assessed punishment of forty years' confinement.

*Issue One – C. S.'s Testimony*

In his first issue on appeal, appellant asserted the trial court abused its discretion by permitting C. S. to testify to an incident of abuse that occurred twenty-three years ago. Allegedly, his behavior was too remote in time and dissimilar to that involving J. G. He also believed C. S.'s testimony was substantially more prejudicial than probative. We overrule the issue.

We review a trial court's decision on admissibility of extraneous-offense evidence under an abuse of discretion standard. *Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016); *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018).

3

In actions involving the offense of indecency with a child, article 38.37 of the Texas Code of Criminal Procedure permits the admission of evidence of other sex crimes committed by the defendant against children, other than the complaining witness of the alleged offense, "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. ANN. art. 38.37 §§ 1(a) (1)(A), 2(b) (West 2018). Yet, the statute does not preclude an objection based on Texas Rule of Evidence 403. TEX. R. EVID. 403 (stating that relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence). A Rule 403 analysis requires consideration of the following:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006) (these factors may "well blend together in practice"). The rule contemplates the exclusion of evidence only when there is a clear disparity between the probative value of the evidence and its degree of prejudice. *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)).

Here, C. S.'s testimony demonstrated that appellant attempted to engage in a sexual act with a child other than J. G. As such, it was relevant to the case at hand. *See Caston v. State*, 549 S.W.3d 601, 612 (Tex. App.—Houston [1st Dist.] 2017, no pet.)

4

(proof that a defendant sexually abused another child is relevant to whether he sexually abused the child-complainant in the charged case); *Gaytan v. State*, 331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd) (evidence that defendant committed extraneous offenses against two other children was "straightforward and directly relevant to the only issue in the case, namely whether [defendant] abused [complainant]"). Indeed, since evidence of prior sexual abuse is especially probative of the accused's propensity to sexually assault children, the Rule 403 balancing test generally disfavors exclusion of the prior sexual assaults. *Caston*, 549 S.W.3d at 612 (quoting *Alvarez v. State,* 491 S.W.3d 362, 371 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd)). Furthermore, even old acts of molestation may be admissible if they involve similar acts against a similar victim. *See Yepez v. State*, No. 14-17-00590-CR, 2019 Tex. App. LEXIS 753, at *23 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (mem. op., not designated for publication); *see also West v. State*, 554 S.W.3d 234, 239–40 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (stating that while remoteness may lessen the inherent probative value of the evidence, the passage of time will not necessarily require exclusion of prior act).

The evidence showed that appellant, charged with indecency with an eight-year-old child, also attempted to commit the same offense twenty-three years earlier to a fourteen-year-old child. Although he characterized the two offenses as dissimilar, we disagree. Like the offense at trial, he 1) approached C. S. while she was alone with him; 2) C. S. was also a member of his extended family; 3) he initiated contact by rubbing C. S.'s legs; 4) sought access to the victim's vaginal area; and 5) laughed in response to the victim's defensive moves.

Furthermore, the State needed the evidence. For instance, appellant implicitly and

5

explicitly accused J. G. of fabricating her allegations of abuse, given the absence of physical evidence or other eyewitness testimony supporting J. G.'s allegations. The circumstance was very much a "he said, she said" situation. *See Hammer*, 296 S.W.3d at 568–69 (noting that Rule 403 "should be used sparingly, especially in 'he said, she said' sexual molestation cases that must be resolved solely on the bases of the testimony of the complainant and the defendant"); *see also Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd) (finding a twenty-five-year-old extraneous offense admissible based on the State's need for extraneous-offense evidence because the State had no physical evidence or eyewitness testimony and the defendant claimed fabrication).

C. S.'s testimony also concerned matters readily comprehensible by lay people, and her testimony was directly relevant to the only issue in the case, whether appellant abused J. G. Thus, it presented little risk of confusing the issues. Moreover, in its entirety, it comprised about 22 pages of the reporter's record and took a relatively short time to present.

Given the foregoing circumstances, we find that the trial court's decision to overrule appellant's Rule 403 objection fell within the realm of reasonable disagreement and, therefore, constituted a legitimate exercise of discretion.

*Issue Two – Improper Jury Argument*

Through appellant's second issue, he argues that the trial court erred by overruling his objection to the State's improper jury argument. Specifically, he claims the improper argument concerned his Fifth Amendment right not to testify and improperly foisted upon him the obligation to prove his defenses. We overrule the issue.

During closing arguments, the State made the following statements:

> So, what do you do when you have someone that you know, it's a family member, so you know them, identity's is not an issue. When you have a known person that's molesting a child. "Well, it wasn't me," isn't going to work as a defense, is it? It's your name, you're a family member, you're known. So, I guess you might be left with, "Well, it was an accident." The touching of her middle, "I didn't—my hand slipped, didn't really mean to touch her there. It sure wasn't to arouse or gratify myself." We don't really have that either, do we?

Appellant subsequently objected, contending that the State's utterance was a comment on his failure to present a defense and to testify. The trial court overruled the objection but instructed the jury that the defendant had a right to not testify and pursuing it could not be used against him. The trial court also gave a similar instruction in open court to the jury prior to deliberations and there were written instructions in the jury charge. Thus, when appellant's issue first arose, the trial court immediately instructed the jury in accordance with appellant's request. Prior to the jury's deliberations and in the trial court's written instructions, the trial court emphasized appellant's right to remain silent and that the State always bears the burden of proof.

We find the State's comments on the evidence more in the nature of comments on a lack of evidence establishing appellant did not 1) commit the offense, 2) touch J. G. by accident, and 3) if he touched her, he did not intend to arouse or gratify himself. The State also chose to deliver these comments by primarily asking rhetorical questions. Simply said, the prosecutor's argument was akin to summarizing the evidence presented and what was absent from it. *See Jackson v. State,* 17 S.W.3d 664, 674 (Tex. Crim. App. 2000) (stating that proper argument includes "summation of the evidence presented at trial"). It attempted to illustrate that there was no contrary or contradictory evidence refuting the elements of the offense and no defensive theories to justify his conduct, and

7

such is a tack that the State may pursue. *Id.* (observing that the State "may comment on the defendant's failure to produce witnesses and evidence so long as the remark does not fault the defendant for exercising his right not to testify"); *accord Zamarripa v. State*, N0. 13-19-00271-CR, 2020 Tex. App. LEXIS 9427, at *17 (Tex. App.—Corpus Christi Dec. 3, 2020, no pet.) (mem. op., not designated for publication) (stating the same).

There was no direct reference by the State to appellant's right against self-incrimination, and an indirect or implied allusion to his silence is not enough. *Wead v. State*, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004). Rather, the prosecutor must manifestly intend the comment to be, or the comment must be of such character that a juror would naturally and necessarily take it to be, a comment on defendant's silence. *Id.* Such was and is not present here.

Having overruled appellant's issues, we affirm the trial court's judgment.


Per Curiam


Do not publish.

8