

# NUMBER 13-24-00531-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

NATHAN ANDREW MENNENGA, Appellant,

v.

THE STATE OF TEXAS, Appellee.

## ON APPEAL FROM THE 19TH DISTRICT COURT
## OF MCLENNAN COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Fonseca**
**Memorandum Opinion by Chief Justice Tijerina**

A jury convicted appellant Nathan Andrew Mennenga of continuous sexual abuse of a young child, a first-degree felony, and sentenced him to life imprisonment. *See* TEX. PENAL CODE § 21.02. By his sole issue, appellant argues that the trial court abused its discretion by admitting extraneous offense evidence in contravention of Texas Rules of

Evidence 401–403. We affirm.[1]

## I.  BACKGROUND

At trial, Jane[2] testified that appellant was her grandmother's boyfriend, and she would visit them at their apartment in Waco. She testified that sometime when she was around five to seven years old, she remembered "waking up and being slanted upward and being kissed inappropriately." She was sleeping on a recliner wearing a nightgown. Jane testified her underwear was off and by her knees and that appellant was kissing the "outside of [her] vagina." When she awoke, she "freaked out" because no one had ever done anything like that to her before. Jane claimed that appellant then "sat [her] down and acted like nothing happened." She told her grandmother the next day, but her grandmother did not believe her and dismissed her claims by stating that those things were not "happening in [their] house and didn't happen." According to Jane, she did not know at the time that what had occurred was wrong.

Another time, when Jane was ten years old, she was with her grandmother and appellant at "Martha's" house. While she was sleeping on the couch, she awoke to appellant fingering her vagina while football was playing on the TV. She was wearing another nightgown.[3] Jane clarified that appellant inserted two fingers inside her vagina, and this felt "uncomfy," she did not like it, and it hurt. When she told appellant to stop, he stopped. Jane stated that this was the last time she visited Waco, and she never told her

---

[1] This appeal was transferred from the Tenth Court of Appeals in Waco pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE § 73.001. We are required to follow the precedent of the transferor court to the extent it differs from our own. TEX. R. APP. P. 41.3.

[2] We use a pseudonym to protect the identity of the complainant. *See* TEX. CONST. art. I, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process"); TEX. CODE CRIM. PROC. ANN. ch. 58, subch. C ("Confidentiality of Identifying Information of Sex Offense Victims"). Jane was fourteen years old at the time of trial.

[3] Jane stated that she no longer wears nightgowns to sleep.

2

grandmother about this second incident. Jane testified that appellant would only assault her at night.

The State sought to introduce extraneous evidence testimony. Outside the jury's presence, Amy testified that she is appellant's biological daughter. Amy stated that around the age of four, appellant began touching her vagina and thighs inside her bedroom. Between the ages of four to fifteen (her sophomore year of high school), appellant would penetrate her vagina with his fingers and perform oral sex on her. Amy explained that appellant would sexually assault her at night while she was sleeping, and she would "wake up to it." Around the age of fourteen or fifteen, she outcried to her mother, and an investigation ensued. Amy testified that she eventually recanted her statements because it "was overwhelming," and she felt like she was not "being heard" or "trusted in the fact that it was happening," and by that time she was just "ready to move on." She testified that, after she outcried, she no longer maintained a relationship with appellant, and she legally changed her surname to her mother's maiden name because of the abuse. The trial court found Amy's testimony adequate to support a finding that appellant committed the offense beyond a reasonable doubt, and the evidence was admitted. *See* TEX. CODE CRIM. PROC. art. 38.37, § 2-a.

At trial, appellant objected to Amy's testimony, stating the testimony was not relevant and that the probative value was substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 401–403. The trial court overruled appellant's objections. The remainder of Amy's testimony at trial largely matched the testimony she gave outside the presence of the jury.

Appellant testified, denying Jane's and Amy's allegations of sexual abuse. Instead, he testified that Jane suffered from "growing pains," and he would massage her legs,

3

arms, shoulders, neck, and head. Appellant admitted that he massaged Jane's buttocks and stomach. However, appellant could not remember that he previously informed the detective that sometimes Jane had her shirt off when he would massage her stomach.

The jury convicted appellant as stated above, and this appeal followed.

## II.    STANDARD OF REVIEW & APPLICABLE LAW

We review a trial court's decision to admit or exclude extraneous offense evidence for abuse of discretion. *Perkins v. State*, 664 S.W.3d 209, 217 (Tex. Crim. App. 2022). A trial court abuses its discretion if its ruling is so clearly wrong as to lie outside the zone of reasonable disagreement. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). We will uphold a trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005); *see also Perkins*, 664 S.W.3d at 217 (cautioning that when reviewing trial court's Rule 403 balancing-test determination, an appellate court reverses a trial court's judgment "rarely and only after a clear abuse of discretion").

Under the rules of evidence, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." TEX. R. EVID. 401. Irrelevant evidence is inadmissible. *Id.* R. 402. Rule 403 provides that relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." *Id.* R. 403.

## III.    EXTRANEOUS OFFENSE EVIDENCE

### A.    Rules 401 and 402

Appellant argues that Amy's testimony was irrelevant because "it does not make

a fact of consequence in determining whether [appellant] committed continuous sexual abuse against [Jane] more or less probable," and the State relied on the evidence "to secure a guilty conviction." However, Article 38.37, § 2 of the Texas Code of Criminal Procedure recognizes the relevance of this type of evidence in this context and expressly expands the admissibility of extraneous-offense evidence "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. art. 38.37 § 2(b); *Guedea v. State*, 683 S.W.3d 549, 552 (Tex. App.—Waco 2023, no pet.); *Perez v. State*, 562 S.W.3d 676, 685 (Tex. App.—Fort Worth 2018, pet. ref'd). "[E]vidence that a defendant has sexually abused another child is relevant to whether the defendant sexually abused the child-complainant in the charged case." *Caston v. State*, 549 S.W.3d 601, 612 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

Jane testified to two separate acts of sexual contact that occurred approximately four years apart. Amy's testimony is relevant in that it describes same or similar physical contact that occurred at the time Amy was of similar age to Jane. Amy's testimony further proves that the sexual contact was intentional. Thus, the relevance of Amy's testimony undermines appellant's testimony that his physical contact with Jane was innocent and non-sexual in nature. See TEX. CODE CRIM. PROC. art. 38.37 § 2(b). Amy's testimony was likewise relevant in that it constitutes evidence that appellant acted in conformity with his character when he committed a similar sexual act against Jane. *See* TEX. CODE CRIM. PROC. Art. 38.37 § 2(b). Accordingly, the trial court did not abuse its discretion in determining the evidence was admissible under Rules 401 and 402.

## B.     Rule 403

"Under Rule 403, it is presumed that the probative value of relevant evidence

5

exceeds any danger of unfair prejudice. The rule envisions exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009). "[R]eviewing courts should afford trial courts a high level of deference regarding admissibility determinations under Rule 403." *Brickley v. State*, 623 S.W.3d 68, 80 (Tex. App.—Austin 2021, pet. ref'd).

> When conducting a Rule 403 balancing test, courts should consider: (1) the evidence's probative force; (2) the proponent's need for the evidence; (3) the evidence's potential to suggest a decision on an improper basis; (4) the evidence's tendency to distract the jury from the main issues; (5) any tendency for the jury to give the evidence undue weight because it has not been fully equipped to evaluate the evidence's probative force; and (6) the likelihood that presenting the evidence will consume an inordinate amount of time.

*Guedea*, 683 S.W.3d at 553 (citing *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)).

Regarding probative force, appellant argues that Amy's testimony is not probative in appellant's alleged offense against Jane because Amy "recanted her statement" shortly after making it. Here, the trial court and jury were presented with all the facts, including Amy's testimony about the offense and the fact that she had previously recanted. "[I]t is up to the fact finder to determine whether to believe the original statement or the recantation. A fact finder is fully entitled to disbelieve a witness's recantation." *Saldaña v. State*, 287 S.W.3d 43, 60 (Tex. App.—Corpus Christi–Edinburg 2008, pet. ref'd) (internal citations omitted). Thus, the trial court and the jury were free to judge Amy's credibility and choose to believe all, some, or none of Amy's testimony. *Id.*; *see Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (holding that the complainant's recantation of sexual abuse did not destroy its probative value when the jury "observed the

6

complainant's demeanor and was entitled not only to reconcile any such conflicts, but even to disbelieve her recantation"). Furthermore, "[a] complainant's recantation of earlier outcry testimony does not destroy the probative value of that testimony." *Martines v. State*, 371 S.W.3d 232, 241 (Tex. App.—Houston [1st Dist.] 2011, no pet.). This factor weighs in favor of admission.

Appellant argues that Amy's testimony "should not have been needed by the State," and if it was needed, "then [Amy's] testimony either inflamed the jury or confused the jury because the ultimate question for the jury was whether to find appellant guilty of continuous sexual abuse" of Jane—not Amy. Appellant further argues that because Jane testified regarding the allegations in the indictment, Amy's testimony was unnecessary. However, the State's case largely depended on Jane's testimony as there was no other eyewitness to the offense. Without Amy's testimony, the case would come down to appellant's word against that of Jane, who was fourteen years old at trial. *See Guedea*, 683 S.W.3d at 553 ("Without V.B.'s [extraneous offense] testimony, the State's case would come down to Guedea's word against the word of the child victim, who was twelve years old at the time of trial."). Moreover, Jane and Amy testified that they were female children of the same ages when appellant began sexually assaulting them. Both children were woken up from their sleep to find appellant's mouth on their genitals and appellant's fingers inside their vaginas. *See Webb v. State*, 575 S.W.3d 905, 911 (Tex. App.—Waco 2019, pet. ref'd). Thus, because of the similarities between the conduct and the children's ages and gender, the lack of eyewitnesses apart from Jane, the lack of physical evidence, and appellant's assertion that his physical contact was non-sexual in nature, we conclude the State's need for the evidence was strong. *See id.* ("The trial court could have reasonably concluded that the State's need for the extraneous-offense evidence was

7

'considerable' given that there were no eyewitnesses, other than the complainant, and no physical evidence available to corroborate the complainant's testimony."). This factor weighs in favor of admission.

Appellant argues that Amy's testimony was unfairly prejudicial because she was appellant's biological daughter and therefore Amy's allegations are more serious. However, appellant does not provide us with authority that the biological relationship with Amy renders appellant's conduct against her more egregious—especially when the complained of conduct is the same. *See* TEX. R. APP. P. 38.1(i). Instead, we find that Amy "discussed actions that were no more serious than the allegations forming the basis for the indictment." *Caston*, 549 S.W.3d at 613 (citing *Robisheaux v. State*, 483 S.W.3d 205, 221 (Tex. App.—Austin 2016, pet. ref'd)). Thus, appellant has not shown that Amy's testimony was *unfairly* prejudicial. *See id.* Regardless, the trial court provided a limiting instruction in the court's charge, and we "presume that the jury obeyed the court's instructions." *Guedea*, 683 S.W.3d at 554. Furthermore, Amy's testimony was neither confusing nor highly technical such that the jury was ill-equipped to evaluate the probative force of the evidence. *See Gaytan v. State*, 331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd) (noting that matters easily comprehensible to laypeople, like evidence of extraneous sexual conduct, are not prone to the tendency to mislead). Amy's testimony in this case was contextual and relevant to whether or not appellant sexually assaulted Jane in this case. *See Bass v. State*, 270 S.W.3d 557 (Tex. Crim. App. 2008) (concluding that evidence was relevant where it showed that the defendant abused other children in a similar fashion). Therefore, we find these factors favor admission.

Under the last factor, the trial court considers whether the presentation of evidence would consume an inordinate amount of time. Here, the parties concede that Amy's

testimony amounted to only ten percent of the entire record. *See Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996) (noting that extraneous-offense evidence was not too time consuming where testimony amounted to "less than" one-fifth of trial testimony); *Deggs v. State*, 646 S.W.3d 916, 927 (Tex. App.—Waco 2022, pet. ref'd) (finding that the alleged victim's testimony "comprised approximately ten pages of the over-250 pages of the reporter's record . . . did not consume an inordinate amount of time"). Thus, the last factor weighs in favor of admissibility.

"The trial court has broad discretion in conducting a Rule 403 balancing test, and we will not lightly disturb its decision." *Webb*, 575 S.W.3d at 911. We conclude that the trial court could have reasonably concluded that the probative value of the evidence of the extraneous offense was not substantially outweighed by the danger of unfair prejudice. *See Deggs*, 646 S.W.3d at 927. We overrule appellant's sole issue.

## IV. CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
5th day of March, 2026.