**Affirmed and Memorandum Opinion filed June 1, 2023**



In The

# Fourteenth Court of Appeals

## NO. 14-22-00206-CR

**ANTHONY CASTANEDA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1505705**

## OPINION

Appellant Anthony Castaneda appeals his conviction for continuous sexual abuse of a child. *See* Tex. Penal Code Ann. § 21.02. We affirm.

### BACKGROUND[1]

Appellant sexually assaulted the Complainant, his biological daughter, on a

---

[1] Because appellant has not challenged the sufficiency of the evidence supporting his conviction, we include only those facts necessary to provide background for his issues raised in this appeal.

continuous basis from the time she was seven until she was thirteen. While appellant started sexually abusing Complainant when she was three or four years old, the first incident Complainant remembered occurred when she was seven. Complainant testified at length regarding the details of appellant's sexual abuse. Complainant testified that appellant sexually assaulted her a hundred or more times. Complainant stated that appellant sexually assaulted her almost every other weekend from the time she was seven years old until she was eleven. Complainant explained that she never told anyone about the abuse because appellant had threatened that if she told anyone he would hurt her and the members of her family. Complainant said she was terrified of appellant because he was big and muscular and would sometimes smother her and her brother with a pillow to control them.

As a result of appellant's threat, Complainant did not tell anyone about the abuse until she was thirteen. Even then, she only told her mother after her younger brother ("Brother") asked her directly if appellant had touched her inappropriately. Brother then encouraged Complainant to tell their mother, which Complainant did. Complainant's mother ("Mother") subsequently took Complainant to the police. Complainant later underwent a sexual assault examination at the Children's Assessment Center. Complainant also attended therapy with Katherine Turner, a licensed professional counselor, to address the trauma caused by appellant's sexual abuse.

At trial, Mother testified as an outcry witness. Appellant objected to this testimony because he claimed the State had not provided notice as required by Article 38.072 of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.072, §2(b) (requiring at least 14 days' notice of intent to use outcry witness). The trial court overruled appellant's objection after the State established

2

that it had timely filed its outcry notice and had also served the outcry notice on appellant the same day.

During her testimony, Mother detailed what Complainant had told her about appellant's sexual abuse. Mother reported the sexual abuse to the police the next morning. When asked about her marriage with appellant, Mother testified that their relationship was normal in the beginning but, when she was six or seven months pregnant with the complainant, appellant became physically abusive and controlling. Appellant objected that the "line of inquiry is totally improper." The trial court sustained appellant's objection. Appellant then asked the trial court to instruct the jury to disregard the objectionable testimony, which the trial court did. Appellant then moved for a mistrial, which the trial court denied.

Turner, Complainant's therapist, also testified during appellant's trial. Turner learned about appellant's sexual abuse of Complainant when Turner was assessing and treating her. Turner testified that she met with Complainant fourteen times to diagnose Complainant's mental health and then treat the trauma caused by appellant's sexual abuse. Turner further testified that, during their sessions, Complainant reported that appellant had sexually assaulted her on multiple occasions.

Brother also testified during appellant's trial. Brother testified about appellant's sexual abuse of Complainant that he directly observed. Brother also testified that he saw appellant take Complainant, his eleven-year-old daughter, into his bedroom and Brother heard Complainant scream at the top of her lungs. Brother said that appellant would take Complainant into his room on a regular basis and stay in the room with her for up to an hour and a half. Brother also told the jury that Complainant would cry every day because appellant made her call him after school. According to Brother, this is what led him to ask her if appellant

was touching her inappropriately. When Complainant answered yes, Brother told her that she needed to tell their mother. Complainant's outcry happened soon thereafter.

Brother further testified that appellant, his biological father, sexually assaulted him starting when he was four years old. Brother further testified that the sexual abuse lasted until he was ten. Brother testified about the details of the sexual abuse before stating that he never told anyone about the abuse because he was afraid of appellant.

During the trial, the State also called twin sisters, Angela and Stephanie,[2] who lived in appellant's house when they were five to seven years old. Angela explained that they moved into appellant's house along with their mother after their mother started dating appellant. Both Angela and Stephanie testified they observed appellant sexually abuse Complainant. Each twin also testified about appellant sexually abusing them. Additionally, Stephanie told the jury that she did not tell anyone about the abuse at the time because appellant told her if she said anything she would be taken away from her mother.

After the State rested, appellant's attorney had appellant take the stand outside the presence of the jury. Appellant's attorney then asked appellant how he pled on the extraneous offenses that Brother and the twin sisters testified about. Appellant stated he was "not guilty" of each extraneous offense. Appellant's counsel then explained to the trial court that he wished to have appellant deny the extraneous offenses in front of the jury without subjecting appellant to cross-examination by the prosecution. The trial court explained to appellant that if he took the stand, he would waive his Fifth Amendment right to remain silent. The trial court also admonished appellant that if he took the stand and refused to

---

[2] These names are pseudonyms used to protect the identifies of the minor witnesses.

4

answer questions on cross-examination, he could be held in contempt for each question he refused to answer. Appellant confirmed that he understood, but he told the trial court that he still wished to take the stand.

The jury returned to the courtroom and appellant took the stand where he denied committing the extraneous offenses. Appellant then refused to answer any of the State's questions on cross-examination as he had been instructed to do by his attorney. As a result of appellant's refusal to answer the prosecution's questions, the trial court held appellant in contempt twenty-two separate times. At the conclusion of the trial, the jury found appellant guilty of continuous sexual abuse of a child. *See* Tex. Penal Code Ann. § 21.02. The trial court subsequently sentenced appellant to serve 55 years in prison. The trial court elected not to punish appellant for contempt because appellant had relied upon the advice of his attorney when he refused to answer the State's questions. This appeal followed.

## ANALYSIS

Appellant raises five issues on appeal. We address them in order.

## I.     The trial court did not abuse its discretion when it denied appellant's motion for mistrial.

In his first issue appellant argues that the trial court abused its discretion when it denied his motion for mistrial made after Mother, the first witness in the trial, testified appellant was physically abusive toward her while she was pregnant with Complainant.[3] Appellant objected that Mother's testimony was "totally

---

[3] This issue arises out of this exchange between the prosecutor and Mother:

Q.     And tell me a little bit about that relationship early on, the very first, at the beginning. Tell me about it.

A.     The very beginning it was okay. It was like any normal relationship. We got along. Once I was pregnant with [Complainant], probably at seven - - six or seven months along, then he became abusive physically and from there it was just he became more controlling.

5

improper." The trial court sustained the objection. Appellant then asked the trial court to instruct the jury to disregard Mother's testimony, which the trial court promptly did. Appellant then moved for a mistrial, which the trial court denied. On appeal, appellant argues the denial of his motion for mistrial was an abuse of discretion by the trial court. We disagree.

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009); *Jackson v. State*, 495 S.W.3d 398, 421 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). We view the evidence in the light most favorable to the trial court's ruling and will uphold the ruling if it falls within the zone of reasonable disagreement. *Ocon*, 284 S.W.3d at 884. A mistrial is an extreme remedy reserved for a narrow class of cases in which the error is highly prejudicial and incurable. *Id.*; *see Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) ("Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required."). The grant of a mistrial is proper "when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). To determine whether a mistrial is warranted, we consider the prejudicial effect, any curative measures taken, and the certainty of conviction absent the prejudicial event. *Crayton v. State*, 463 S.W.3d 531, 535 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Hawkins*, 135 S.W.3d at 77).

Testimony that improperly refers to extraneous offenses allegedly committed by a defendant may generally be cured by a prompt instruction from the trial court to disregard the testimony. *See Ladd*, 3 S.W.3d at 571; *Phillips v. State*, 130 S.W.3d 343, 347 (Tex. App.–Houston [14th Dist.] 2005) *aff'd*, 193 S.W.3d 904 (Tex. Crim. App. 2006). An exception to this general rule exists if "the

6

improper testimony is clearly calculated to inflame the minds of the jury and is of such a character to suggest the impossibility of withdrawing the impression produced on the minds of the jury." *Jackson*, 495 S.W.3d at 421 (citing *Hudson v. State*, 179 S.W.3d 731, 738 (Tex. App.—Houston [14th Dist.] 2005, no pet.)).

We conclude that the prejudicial effect of Mother's testimony was low because the challenged testimony was brief, non-specific, and not repeated by the State throughout the remainder of the trial. In addition, the information was not solicited by the State because Mother's answer exceeded the scope of the State's initial question. Finally, any prejudicial effect Mother's testimony may have had was mitigated by the fact the same information was introduced, without objection, during appellant's cross-examination of Complainant. *See Rogers v. State*, 200 S.W.3d 233, 238 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (concluding any error in denial of mistrial was harmless because same information was introduced without objection later during trial); *Harris v. State*, 164 S.W.3d 775, 783 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (stating that inadmissible evidence can be rendered harmless if other evidence is admitted without objection and it proves the same fact that inadmissible evidence sought to prove).

Turning to the curative measures taken, the trial court sustained appellant's objection and then promptly instructed the jury to disregard the State's question and Mother's answer. A prompt instruction to disregard will usually cure any prejudice resulting from improper testimony regarding extraneous offenses. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000); *Austin v. State*, 222 S.W.3d 801, 815 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). Appellate courts generally presume that a jury follows a trial court's instruction to disregard the improper testimony. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). This presumption is refutable, but the appellant must rebut the presumption

by pointing to evidence in the record indicating that the jury failed to follow the trial court's instructions. *Pena v. State*, 554 S.W.3d 242, 251 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd). Appellant has not pointed to any evidence in the record, and we have found none in our own search, suggesting that the jury failed to follow the trial court's instruction to disregard. Because appellant has not rebutted the presumption that the jury followed the trial court's instruction, we must presume that the jury followed it. *Thrift*, 176 S.W.3d at 224; *Pena*, 554 S.W.3d at 251 (concluding appellant had not rebutted presumption because he did not point out evidence in record demonstrating that the jury did not follow trial court's instruction).

Finally, we turn to the certainty of appellant's conviction absent the prejudicial event. The uncorroborated testimony of a child sexual assault victim alone is legally sufficient evidence to support a conviction. *See* Tex. Code Crim. Proc. Ann. art. 38.07; *Green v. State*, 607 S.W.3d 147, 153 (Tex. App.—Houston [14th Dist.] 2020, no pet.). Here, in addition to the complainant, three other witnesses testified that they observed appellant sexually abuse the complainant on multiple occasions. We conclude that the State presented overwhelming evidence of appellant's guilt and it is highly likely the jury would have reached the same verdict even without Mother's stricken testimony.

After considering all three factors, we hold that the trial court did not abuse its discretion when it denied appellant's motion for mistrial. *See Hawkins*, 135 S.W.3d at 85 (concluding, after balancing three factors, that trial court did not abuse its discretion when it denied defendant's motion for mistrial). We overrule appellant's first issue.

## II. The trial court did not abuse its discretion when it permitted the outcry witness to testify.

Appellant argues in his second issue that the trial court abused its discretion when it permitted Mother to testify as an outcry witness because he allegedly did not receive timely notice of the State's intent to call Mother as the outcry witness. *See* Tex. Code Crim. Proc. Ann. art. 38.072(2)(b) (establishing fourteen-day notice requirement for hearsay exception to apply). We disagree.

Article 38.072 creates a hearsay exception that allows an outcry witness to testify. *See* Tex. Code Crim. Proc. Ann. art. 38.072(2). For an outcry witness to testify under this statute, the party intending to offer the outcry statement must, among other requirements not at issue here, notify the adverse party "on or before the 14th day before the date the proceedings begin." *Id.* We review a trial court's determination that an outcry statement is admissible under Article 38.072 for an abuse of discretion. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *Nino v. State*, 223 S.W.3d 749, 752 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Asserting that he did not receive the required fourteen-day notice, appellant objected to Mother testifying as an outcry witness. The State then produced a written "Notice of Intention to use Child Abuse Victim's Hearsay Statement" which identified Mother as the outcry witness filed approximately four years before appellant's trial commenced. The notice also contained a certificate of service demonstrating that the State served the notice on appellant the same day it was filed. "A certificate of service creates a presumption that a document properly sent is received by the addressee." *Webb v. State*, 36 S.W.3d 164, 177 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Appellant has offered no evidence rebutting the presumption that he received the outcry witness notice. *See Prosper v. State*, 788 S.W.2d 625, 626 n.1 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd) ("Unsworn statements by counsel are not proper evidence."). We therefore

conclude that the record establishes the State timely served appellant with the required outcry witness notice. We overrule appellant's second issue.

## III. Appellant did not preserve his third issue for appellate review.

The State called Turner, a licensed professional counselor, to testify during appellant's trial. The State called Turner to testify regarding what Complainant told her during therapy sessions addressing the trauma caused by appellant's sexual abuse. At the beginning of Turner's testimony, the State asked Turner if having her notes available during her testimony would help her to testify. Turner believed her notes would help. Appellant did not object to Turner's use of her notes. When Turner began testifying about what Complainant told her during therapy sessions, appellant lodged a hearsay objection. The State responded Turner's testimony was admissible because it fit within an exception to the hearsay rule, specifically that Complainant's statements were made for the purpose of medical diagnosis or treatment. *See* Tex. R. Evid. 803(4). The trial court permitted the State to establish the predicate information for the exception and the State then continued to ask Turner substantive questions about what Complainant reported during her therapy sessions. Appellant lodged one additional hearsay objection but never obtained a ruling on either hearsay objection. Appellant also did not object to the trial court's failure to rule.

On appeal, appellant argues that the trial court abused its discretion when it permitted Turner to testify using her notes over his hearsay objection. As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion. Tex. R. App. P. 33.1(a)(1). Because appellant did not object when the State asked Turner about using her notes, we conclude that he has not preserved his argument about Turner's use of her notes for appellate review. *Id.* To the extent

10

appellant is arguing on appeal that the trial court abused its discretion when it permitted Turner to testify about what the complainant told her during her therapy sessions, we conclude that he also failed to preserve this argument for appellate review. While appellant did lodge a hearsay objection, he failed to obtain a ruling on that objection. As a result, he has not preserved this part of his third issue for appellate review. *See id.*; *Smith v. State*, 499 S.W.3d 1, 5–6 (Tex. Crim. App. 2016) (noting admission of evidence does not preserve error without adverse ruling on the record); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) ("To preserve error for appellate review, the complaining party must make a specific objection and obtain a ruling on the objection.").

Appellant also argues on appeal that the trial court abused its discretion because the State failed to qualify Turner as an expert. When appellant's counsel expressed confusion over whether the State was offering Turner as an expert witness who would offer opinion testimony, he broached the possibility of a *Daubert* hearing to establish Turner's expertise. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) (establishing procedure to establish credentials of proposed expert witness); *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006) ("[B]efore admitting expert testimony under Rule [of Evidence] 702, the trial court must be satisfied that three conditions are met: (1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case."). The State explained it was not offering Turner as an expert who would render opinion testimony. The State continued that Turner was testifying exclusively as a fact witness who would testify under the 803(4) hearsay exception to what Complainant told her during therapy sessions. At that point, the

11

trial court asked appellant's counsel if he still needed a *Daubert* hearing. Appellant's counsel responded that "we have nothing further at this point." Appellant therefore lodged no objection in the trial court that the State failed to qualify Turner as an expert. Because Turner did not testify as an expert, appellant has presented nothing for review in this part of his third issue. Even if Turner had testified as an expert, appellant failed to preserve any argument regarding her qualifications because he did not make an objection on this basis or obtain a ruling from the trial court. *See* Tex. R. App. P. 33.1(a)(1). We overrule appellant's third issue.

## IV. This court does not have jurisdiction over the issue raised in appellant's fourth issue.

In his fourth issue, appellant asserts that the trial court erred when it threatened to hold appellant in contempt in front of the jury. Having reviewed the record, we conclude that appellant has misstated the trial court's action. The trial court did not threaten appellant with contempt, it instead held appellant in contempt after he took the stand and answered his counsel's questions, but then refused to answer the State's cross-examination questions. No matter how appellant attempts to artfully argue around the fact the trial court held him in contempt, his ultimate complaint in his fourth issue is that the trial court held him in contempt for his refusal to answer the State's questions. The validity of a contempt judgment can be attacked only by way of habeas corpus. *Collins v. Kegans*, 802 S.W.2d 702, 705 (Tex. Crim. App. 1991); *see Ex parte Eureste*, 725 S.W.2d 214, 216 (Tex. Crim. App. 1986) ("There is no remedy or right of appeal from an order of contempt."); *Ex parte Rose*, 704 S.w.2d 751, 752, n.1 (Tex. Crim. App. 1984) ("In contempt proceedings there is no remedy by appeal."); *Gonzalez v. State*, 187 S.W.3d 166, 170 (Tex. App.—Waco 2006, no pet.). We therefore are without jurisdiction in this appeal to address appellant's fourth issue.

**V.    The trial court did not abuse its discretion when it allowed the twin sisters to testify about extraneous offenses committed by appellant.**

In his fifth issue on appeal, appellant argues that the trial court abused its discretion when it permitted the twin sisters, Angela and Stephanie, to testify regarding appellant sexually abusing them.  Specifically, appellant asserts their testimony was not relevant and that its probative value was substantially outweighed by its prejudicial effect in violation of Rule 403 of the Texas Rules of Evidence.  We address each argument in turn.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion.  *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).  A trial court abuses its discretion only if its decision is so clearly wrong as to lie outside the zone within which reasonable people might disagree.  *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

To be admissible, a trial court must first determine that the evidence is relevant.  *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016).  Relevant evidence is evidence that has a tendency to make a fact more or less probable than it would be without the evidence that is also of consequence in the action.  Tex. R. Evid. 401; *Henley*, 493 S.W.3d at 83.

Here, each twin testified that appellant, who they were living with along with their mother, sexually assaulted them on multiple occasions when they were younger.  This evidence is relevant to the specific charge against appellant at issue here because he was charged with continuously sexually assaulting Complainant in similar ways and at a similar age.  We hold that the trial court could have reasonably concluded that the twins' testimony was directly relevant to the charge against appellant and therefore did not abuse its discretion when it overruled appellant's relevance objection and admitted the twins' testimony.  *See Caston v.*

*State*, 549 S.W.3d 601, 612 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (rejecting defendant's Rule 403 argument because the extraneous offense evidence that the defendant sexually assaulted another child "is relevant to whether the defendant sexually abused the child-complainant in the charged case").

Ordinarily evidence of a person's character or character trait is not admissible to prove the person acted in accordance with that character or trait on a particular occasion. Tex. R. Evid. 404(a)(1). Article 38.37 of the Code of Criminal Procedure is an exception to rule 404(a)(1). *Romano v. State*, 612 S.W.3d 151, 158 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd). This article applies to certain types of sex-based offenses, including continuous sexual abuse of a young child. Tex. Code Crim. Proc. art. 38.37, § 2(a)(B); *Lara v. State*, 513 S.W.3d 135, 141 (Tex. App.—Houston [14th Dist.] 2016, no pet.). If the statutory requirements of article 38.37 are met, evidence that ordinarily would be inadmissible under rule 404(a)(1) becomes admissible. Tex. Code Crim. Proc. art. 38.37, § 2(b); *Lara*, 513 S.W.3d at 141.

Appellant, recognizing that article 38.37 allows the admission of testimony like that of the twins, nevertheless argues that the trial court abused its discretion because it should have sustained his Rule 403 objections. Rule 403 authorizes a trial court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, misleading the jury, undue delay, or needlessly presenting cumulative evidence. Tex. R. Evid. 403; *Ryder v. State*, 581 S.W.3d 439, 453 (Tex. App.—Houston [14th Dist.] 2019, no pet.). On appeal, appellant argues only that the extraneous offense evidence was unfairly prejudicial.

Rule 403 favors the admission of probative evidence and it is presumed that relevant evidence will be more probative than prejudicial. *Ryder*, 581 S.W.3d at 453. An appellate court considers the following factors when analyzing a Rule 403

challenge on appeal: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the challenged evidence. *Id.*

We conclude that the extraneous offense evidence was highly probative. It was offered to support a disputed fact: that appellant sexually assaulted Complainant on a continuing basis. In addition to denying the accusations against him, appellant pursued a defensive theory that Complainant fabricated the accusations against him in support of Mother's efforts to regain custody of her youngest daughter. Testimony that appellant sexually assaulted two other children in a similar manner and at a similar age was highly probative to rebut appellant's defense that Complainant fabricated her allegations. *Id.*; *Caston*, 549 S.W.3d at 612. This factor weighs in favor of admitting the evidence.

The second Rule 403 factor requires us to consider whether the extraneous offense evidence had the potential to irrationally impress the jury. Here, the extraneous offenses were similar to the charged offense. "Whenever the extraneous offense is similar to the charged offense, there is always a potential that the jury may be unfairly prejudiced by the defendant's character conformity." *Beam v. State*, 447 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2014, no pet.). But the impermissible inference of character conformity was minimized by the inclusion of a limiting instruction informing the members of the jury that they could only consider the extraneous offenses if they believed beyond a reasonable doubt that the appellant committed the extraneous offenses. *See Wishert v. State*, 654 S.W.3d 317, 334 (Tex. App.—Eastland 2022, pet. ref'd) ("Therefore, any potential harm to [defendant] would be further mitigated by the trial court's limiting instruction."). Also, while evidence of sexual abuse of children is often

15

considered inherently inflammatory, in this case appellant has not demonstrated how the challenged extraneous offense evidence was any more heinous or inflammatory than the evidence pertaining to the charged offense. *See Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet. ref'd) (holding any potential to suggest a decision on an improper basis was ameliorated somewhat by the fact that the extraneous offense testimony was "no more serious than the allegations forming the basis of the indictment"). This factor weighs in favor of admission.

The third factor examines the time needed to develop the evidence. Here, the combined testimony, direct and cross-examination, of the twins took approximately one and a half hours of trial time and 86 pages of the reporter's record of a multi-day trial in which the State presented nine witnesses. Considering the length of the trial and the overall number of witnesses, we conclude that the two witnesses did not consume an inordinate amount of time. This factor weighs in favor of admissibility.

The fourth and final factor examines the proponent's need for the extraneous offense evidence. Here, the State's need was strong because the challenged evidence had bearing on relevant matters, including the character of the defendant and acts performed in conformity with that character, as well as to rebut appellant's defensive theory that Complainant's accusations were fabricated. *See Caston*, 549 S.W.3d at 612 (concluding State had great need for extraneous evidence because it was relevant to whether defendant sexually abused the child-complainant in the charged case and also because it rebutted defendant's defensive theory); *Lane*, 933 S.W.2d at 521 (holding that need for extraneous offense evidence is greatest when the evidence supported an element of a "hotly contested issue"). This factor weighs in favor of admission.

16

After balancing the Rule 403 factors, we conclude that the trial court acted within the zone of reasonable disagreement when it determined that the probative value of the extraneous offense evidence was not substantially outweighed by its prejudicial effect. We overrule appellant's fifth issue.

## CONCLUSION

Having overruled each of appellant's issues raised in his appeal, we affirm the trial court's judgment.

/s/ Jerry Zimmerer
   Justice

Panel consists of Justices Wise, Zimmerer, and Wilson.

Publish — TEX. R. APP. P. 47.2(b).