**Opinion filed May 21, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00297-CR
_____

## MANUEL RODRIGUEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellees

**On Appeal from the 104th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 23305-B**

## O P I N I O N

When an indicted offense is one that is enumerated in Article 38.37, Section 2(a) of the Code of Criminal Procedure, as it is here, Section 2(b) permits the admission of extraneous evidence that shows the defendant has committed a separate offense of a sexual nature against a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37 § 2(a)(1)(C), 2(b) (West Supp. 2025). Under such circumstances, to be

admissible, the "child victim" of the offense for which the defendant is on trial need not be the same child victim of the separate, extraneous offense(s). *See Wishert v. State*, 654 S.W.3d 317, 330–31 (Tex. App.—Eastland 2022, pet. ref'd) (collecting cases).

In this case, a jury convicted Appellant, Manuel Rodriguez, of the offense of indecency with a child, a second-degree felony. TEX. PENAL CODE ANN. § 21.11(a)(1), (d) (West 2026). The trial court assessed his punishment at imprisonment for twenty years in the Institutional Division of the Texas Department of Criminal Justice and a $10,000 fine. PENAL § 12.33 (West 2019).

On appeal, Appellant raises two issues contending that: (1) Article 38.37, Section 2(b) is unconstitutional both facially and as applied to him; and (2) the trial court abused its discretion when it admitted, pursuant to this statute, evidence of an allegation that Appellant committed a separate sexual offense against a child. *See* CRIM. PROC. art. 38.37, §§ 2(a)(1)(C), (D), 2(b), 2-a. We affirm.

## I. *Factual Background*

Before the venire panel was seated, the trial court held a hearing to consider the admissibility of outcry testimony and extraneous-offense testimony. The outcry witness, J.T., is the stepmother of G.T., the victim of the indicted offense.[1] The extraneous-offense witness, K.N, who was seventeen at the time of trial, testified that when he was twelve Appellant lived with him and his mother and sexually assaulted him. Appellant objected to the admission of this extraneous-offense evidence on the grounds that it was (1) too dissimilar to the indicted offense, and

---

[1]To protect the identity of the victims and their families, we refer to them by either pseudonyms or initials. *See* TEX. CONST. art. I, § 30(a)(1); TEX. R. APP. P. 9.10(a)(3).

(2) unduly prejudicial.  The trial court ruled that K.N.'s testimony was admissible under Article 38.37, Section 2(b).

G.T. and Appellant are part of a large family.  J.T. and her husband share ten children—six are J.T.'s biological children, and the other four, including G.T., are her stepchildren.  During trial, conflicting testimony was presented as to whether Appellant is the stepson or brother-in-law of one of J.T.'s daughters.

G.T., who was nineteen at the time of trial, testified that when he was fifteen, Appellant, who was then twenty-seven, fondled G.T.'s penis over his pants.  According to G.T., he had known Appellant for several years because Appellant is his brother-in-law's brother.  G.T. has an adult stepsister, L.B., who lived with her husband and three sons; this incident occurred during a sleepover at L.B.'s home.  G.T. testified that he, his brother, and L.B.'s sons played video games and slept in the bottom bunk of a bunkbed in one of the children's bedrooms.

After the children went to sleep, Appellant and L.B.'s older son returned from work.  Appellant entered the bedroom and used the light from his cell phone's screen to see.  At the time, G.T. was awake but the other children were asleep.  Appellant grabbed G.T.'s leg and pulled it straight out, and G.T. felt Appellant's hand touch his penis over G.T.'s pants for about fifteen seconds; G.T. curled his legs back up toward his body and Appellant stopped touching him.  G.T. then saw Appellant leaning over the bed.  After pausing, Appellant tugged on G.T.'s leg again, but G.T. stiffened and resisted.  Appellant then climbed up onto the top bunk.

G.T. was "shellshocked" and laid there wondering what to do.  He considered leaving the bedroom to sleep on the couch but decided not to because he was concerned about his brother and nephew that were sleeping next to him.  He then observed Appellant climb down from the top bunk and go to the other side of the

3

bunkbed and "[do] the same stuff" to G.T.'s nephew, who was ten. G.T. told Appellant to stop and leave them alone, which he did. After that, G.T. remained in the room with the other children, although he struggled to sleep because he was afraid.

G.T. texted J.T. around 3:00 a.m. and said that he needed to tell her something. He outcried to her the next morning after he returned home; J.T. and her husband thereafter reported this incident to law enforcement. G.T testified he was aware that Appellant had been accused of sexually abusing a child in Montgomery County (the incident involving K.N.), although not necessarily "every single detail," and that the family "did not want to believe it."

J.T. testified that Appellant is the stepson of one of her daughters. She testified that G.T. and her other young son spent the night at L.B.'s house. Although she received the text that G.T. had sent her, she did not become aware of it until later that morning. J.T. picked up the children from L.B.'s home that morning, and G.T. delayed telling her what Appellant had done until he and J.T. were alone. According to J.T., G.T. said that Appellant fondled his penis over his pants while the children were asleep in the bottom bunk at L.B.'s house. G.T. said that he was afraid to leave the bedroom because the other children were there, and he did not want to leave them alone. G.T. cried as he told J.T. what had occurred. J.T. testified that she, L.B., and L.B.'s husband had known Appellant for approximately fifteen years, and that Appellant was "family's family." J.T. also testified they were aware that Appellant had been accused of sexually abusing K.N., and although at first they did not believe it had occurred, they believed it now.

L.B. testified that J.T. is her mother, G.T. is her stepbrother, and Appellant is her sister's brother-in-law. On the night in question, G.T., his brother, and L.B.'s

4

sons played video games in their bedroom and fell asleep on the bottom bunk. Appellant returned from work intoxicated and slept at L.B.'s house that night. After he arrived, L.B. called her oldest son, who drove Appellant from work, into her bedroom; Appellant followed, and she told him she was upset that he was intoxicated and had put her son in that situation, because he only had a permit to drive. L.B. testified that Appellant then walked down the hall to the bedroom where G.T. and the other children were sleeping and climbed onto the top bunk. L.B. did not see Appellant use any lighting device when he entered the bedroom, but she did see him climb up the ladder and onto the top bunk; she was standing at the door of her room speaking with her oldest son at the time. She testified that the children's bedroom was "quite a distance" away from her bedroom—past the living room and the kitchen. She went to sleep soon after this and did not know if anything occurred later that night.

K.N., who was seventeen at the time of trial, testified that when he was twelve, Appellant, who was then twenty-five, fondled him and sexually assaulted him by inserting his penis into K.N.'s anus. K.N. was playing video games in the bedroom that he shared with Appellant; Appellant was also in the room. K.N. finished playing video games and began playing a game on his cell phone while lying on Appellant's bed. Appellant laid down behind him, "spooning" him, and touched K.N.'s "butt" with his hand and his erect penis. Appellant then pulled down K.N.'s shorts and inserted his penis into K.N.'s anus. Appellant told K.N. not to tell anyone what he had done.

K.N.'s grandmother walked past the open bedroom door while Appellant was "spooning" K.N. in Appellant's bed, under the covers. When she continued walking down the hall, K.N. got out of Appellant's bed and into his own bed. Four days later,

5

K.N. told his mother and grandmother that Appellant had touched him sexually, and this incident was reported to law enforcement. Later, K.N. reported that Appellant had sexually assaulted him.

K.N.'s mother, K.B., testified that she worked with Appellant and had invited him to live in her home and share a bedroom with K.N. because Appellant "was going through some tough times." K.B. testified that Appellant sexually assaulted K.N. on the day Appellant moved in with them.

K.N.'s grandmother, C.V., testified that the family had known Appellant for about a year because she and K.B. worked with him and had invited him to their house for crawfish boils or to "hang out." During that time, before he moved in, Appellant developed a relationship with K.N. by buying him video games, gift cards, and taking him to the mall. C.V. testified that although they believed that Appellant was interested in a relationship with K.N.'s mother, it appeared to her that Appellant was grooming K.N.

On the day of the incident involving K.N., the door to K.N.'s bedroom was ajar, and C.V. looked in and saw Appellant and K.N. "spooning" on Appellant's bed, under the covers. She looked in again shortly thereafter and K.N. had moved to his own bed. C.V. was suspicions and "shocked" because she believed they had "split up" when she had walked by. She told K.B. "something [was] going on in there." According to C.V., K.N. at first denied that anything had occurred because K.N. was twelve and "didn't know any different. . . . [H]e was just trying to protect his friend."

After K.N. advised K.B. and C.V. that "something" had occurred with Appellant, the three of them met Appellant in C.V.'s front yard to listen to his explanation of events. At first, Appellant denied that anything had occurred, but he eventually conceded that his "private part probably touched [K.N.'s] butt." C.V.

testified that Appellant told her he was sorry and that he understood she would probably want to "beat [his] a-s" and to call the police. He then got in his car and drove away, and they never saw him again.

The State also presented testimony from two Montgomery County Sheriff's deputies who investigated K.N.'s outcry and the sexual assault nurse examiner (SANE) who examined K.N. in January 2020. K.N. told the SANE nurse that Appellant had "pulled [K.N.'s] pants and [his] underwear down, and [Appellant's] wee wee touched [K.N.'s] butt." When the SANE nurse asked K.N. if Appellant's "wee wee [went] into [his] butt?" K.N. confirmed: "Yes." Appellant's criminal case involving the offense he committed against K.N. was still pending at the time of the trial in this case.

## II. *Standards of Review and Applicable Law*

### A. *Constitutional Challenges*

A facial constitutional challenge attacks the meaning of the statute itself rather than the statute's application to the defendant. *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015). Whether a statute is facially constitutional is a question of law we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). To resolve a facial challenge to the constitutionality of a statute, we focus "on the language of the statute itself rather than how it operates in practice." *McGruder v. State*, 483 S.W.3d 880, 883 (Tex. Crim. App. 2016) (internal quotation marks omitted). Generally, with a facial challenge, it is the challenger's burden to establish that the statute operates unconstitutionally in every application. *Ex parte Stafford*, 726 S.W.3d 231, 235 (Tex. Crim. App. 2024) ("To mount a successful facial constitutional challenge, the challenger must establish that no set of circumstances exists under which the statute would be valid or that the statute lacks any plainly

legitimate sweep."); *Lo*, 424 S.W.3d at 15. In our review, we make every reasonable presumption in favor of the statute's constitutionality, unless the contrary is clearly shown. *Peraza*, 467 S.W.3d at 514.

An as-applied challenge "concedes the general constitutionality of the statute, but asserts that the statute is unconstitutional as applied to [the defendant's] particular facts and circumstances." *Davis v. State*, No. AP-77,106, 2026 WL 692433, at *17 (Tex. Crim. App. Mar. 12, 2026) (quoting *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011)); *Estes v. State*, 546 S.W.3d 691, 698 (Tex. Crim. App. 2018). Because a statute may be valid as applied to one set of facts and invalid as applied to another, the defendant must show that, in its operation, the challenged statute was unconstitutionally applied to him. *Fine*, 330 S.W.3d at 910.

Under either type of constitutional challenge, we begin with the presumption that the challenged statute is valid, and that the legislature has not acted unreasonably or arbitrarily by enacting it. *Id.*; *see Faust v. State*, 491 S.W.3d 733, 744 (Tex. Crim. App. 2015); *Lo*, 424 S.W.3d at 14–15; *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013); *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978); *see also* TEX. GOV'T CODE ANN. § 311.021(1) (West 2013). The Due Process Clauses of the Fifth and Fourteenth Amendments protect a person from the deprivation of life, liberty, or property without due process of law. U.S. CONST. amends. V, XIV, § 1. To establish a due process violation, it is Appellant's burden to show that the challenged statute violates those "'fundamental conceptions of justice which lie at the base of our civil and political institutions,' and which define 'the community's sense of fair play and decency.'" *Dowling v. United States*, 493 U.S. 342, 352–53 (1990) (internal citations omitted) (quoting *United States v.*

*Lovasco*, 431 U.S. 783, 790 (1977)); *Buxton v. State*, 526 S.W.3d 666, 686 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

B. *Evidentiary Challenge*

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019); *Wishert*, 654 S.W.3d at 329. This standard also applies to a trial court's decision to admit or exclude extraneous-offense evidence. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Wishert*, 654 S.W.3d at 329; *Barron v. State*, 630 S.W.3d 392, 410 (Tex. App.—Eastland 2021, pet. ref'd). We will not reverse a trial court's decision to admit or exclude evidence, and there is no abuse of discretion, unless that decision lies outside the zone of reasonable disagreement. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018); *De La Paz*, 279 S.W.3d at 343–44; *Barron*, 630 S.W.3d at 410. Furthermore, we will uphold a trial court's evidentiary ruling, even if the trial court's reasoning is flawed, if it is correct on any legal theory that finds support in the record and is applicable to the case. *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016); *Wishert*, 654 S.W.3d at 329; *Dering v. State*, 465 S.W.3d 668, 670 (Tex. App.—Eastland 2015, no pet.).

III. *Analysis*

A. *Constitutionality of Article 38.37, Section 2(b)*

In his first issue, Appellant contends that Article 38.37, Section 2(b) is unconstitutional, both facially and as applied to him, because it violates the due process protections guaranteed by the United States Constitution.

Article 38.37, Section 2(b) states:

(b) Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted

9

in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

CRIM. PROC. art. 38.37, § 2(b).

As a threshold matter, the State contends, and we agree, that Appellant did not preserve his constitutional challenges for appellate review. A challenge to the constitutionality of a statute is a forfeitable right and must be preserved in the trial court either during or after trial. *Solis v. State*, 726 S.W.3d 394, 413 (Tex. Crim. App. 2025) (first citing TEX. R. APP. P. 33.1(a); then citing *Reynolds v. State*, 423 S.W.3d 377, 383 (Tex. Crim. App. 2014); and then citing *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009)); *Cruz v. State*, 698 S.W.3d 265, 268 (Tex. Crim. App. 2024). Both facial and as-applied challenges must first be raised and addressed in the trial court to preserve either complaint for appellate review. *Solis*, 726 S.W.3d at 413; *Flores v. State*, 245 S.W.3d 432, 437 n.14 (Tex. Crim. App. 2008); *see* TEX. R. APP. P. 33.1.

At the hearing before the jury was seated, Appellant objected to the use, and subsequent admission, of K.N.'s testimony on the grounds that it involved a different type of offense—sexual assault, rather than indecency with a child—and that this difference rendered the extraneous-offense evidence unduly prejudicial. Neither objection raised the constitutional challenges to K.N.'s testimony that Appellant now asserts on appeal; therefore, they were not preserved for our review. *See* TEX. R. APP. P. 33.1; *Karenev*, 281 S.W.3d at 434 ("[A] defendant may not raise for the first time on appeal a facial challenge to the constitutionality of a statute."); *Cooper v. State*, 673 S.W.3d 724, 749 (Tex. App.—Fort Worth 2023, no pet.) ("A constitutional objection must also alert the trial court to the constitutional bases for

the objection, allowing the trial court to make a reasoned ruling."). Though Appellant's arguments on appeal—that the admission of this extraneous-offense evidence is unduly prejudicial and that such extraneous-offense evidence is *always* so prejudicial as to render the statute unconstitutional—overlap, these complaints are clearly distinct, a fact acknowledged by Appellant's discrete presentation of each in his brief.

Nevertheless, even if Appellant had properly raised and preserved his constitutional challenges for our review, as we discuss below, they would fail.

## B. *Facial Challenge*

At the outset, we note that the courts of appeals that have considered this same argument have uniformly held that Article 38.37, Section 2(b) is facially constitutional. *See, e.g.*, *Belcher v. State*, 474 S.W.3d 840, 848 (Tex. App.—Tyler 2015, no pet.); *Harris v. State*, 475 S.W.3d 395, 403 (Tex. App—Houston [14th Dist.] 2015, pet. ref'd).[2] We agree with our sister courts. Put simply: "The special circumstances surrounding the sexual assault of a child victim outweigh normal concerns [that are] associated with evidence of extraneous acts." *Jenkins v. State*, 993 S.W.2d 133, 136 (Tex. App.—Tyler 1999, pet. ref'd).

Appellant acknowledges the uniform agreement of the courts of appeals on this issue; however, he nonetheless states that he "disagrees" with these courts' interpretations of the statute. Appellant urges us to recognize what he characterizes as the "fallacy in reasoning" embedded in Article 38.37, Section 2(b) and the courts

---

[2]We have not addressed this specific issue until today; however, every Texas court since *Harris* that has upheld the constitutionality of Article 38.37, Section 2, has also done so when confronted with due process challenges. *See Avila v. State*, No. 05-24-00160-CR, 2025 WL 3670491, at *2 (Tex. App.—Dallas Dec. 17, 2025, no pet.) (mem. op., not designated for publication) (collecting cases); *Torres v. State*, No. 08-19-00309-CR, 2021 WL 3013307, at *8 (Tex. App.—El Paso July 16, 2021, no pet.) (not designated for publication) (same).

of appeals' decisions that have upheld its constitutionality. He further asserts that the admission of extraneous-offense evidence pursuant to Article 38.37, Section 2(b) is so inherently prejudicial as to invert the presumption of innocence that is due every defendant, and that the procedural protections—such as the required thirty days' notice the State must provide of its intent to introduce extraneous-offense evidence, the trial court's required pre-trial determination of the admissibility of this and other evidence, the Rule 403 balancing test, and the State's burden to prove the defendant's guilt beyond a reasonable doubt—are insufficient and illusory.

The concerns expressed by Appellant have been thoroughly addressed by our sister courts, and, in each instance, resolved against the position that he now advances. For example, in *Belcher*, the court reviewed the history of propensity evidence, specifically in the context of extraneous offenses that are offered to show character conformity, under both the Federal and Texas Rules of Evidence. *See Belcher*, 474 S.W.3d at 844–45 (explaining that child sexual abuse cases present evidentiary problems not resolved by any of the exceptions to Rule 404 of the Texas Rules of Evidence, and that in such cases the prosecution must rely on the largely uncorroborated testimony of the child victim, which results in the focal issue becoming the child's credibility); *Harris*, 475 S.W.3d at 402 ("Prosecuting sex crimes committed against children can be difficult due to the physical and emotional trauma suffered by the victims. . . . Children often are targeted for these crimes, in part because they tend to make poor witnesses.") (quoting Senate Comm. on Crim. Just., Bill Analysis, Tex. S.B. 12, 83rd Leg., R.S. (2013)). The courts in *Belcher* and in *Harris* further explained that the legislature modeled Article 38.37, Section 2(b) after the text of Rule 413(a) of the Federal Rules of Evidence, a rule which is broader in scope and has been held *not* to violate the due process clause.

12

*See Belcher*, 474 S.W.3d at 845–46 (citing *United States v. Mound*, 149 F.3d 799, 801 (8th Cir. 1998)); *Harris*, 475 S.W.3d at 401 (first citing *Mound*, 149 F.3d at 801; and then citing *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998)).

In holding that Article 38.37, Section 2(b) does not violate due process, our sister courts emphasized that the procedural safeguards present in the statute itself, as well as the protections embodied in Rule 403 of the Texas Rules of Evidence, are adequate to ensure that a defendant receives a fair trial. *Caston v. State*, 549 S.W.3d 601, 610 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (collecting cases). The State is required to give notice of its intention to offer Article 38.37 evidence no later than thirty days prior to trial. CRIM. PROC. art. 38.37, § 3. Before the extraneous evidence may be introduced, the trial court is required to hold a hearing outside the presence of the jury to determine whether the extraneous evidence to be offered at trial will be adequate to support a jury's finding that the defendant committed the extraneous offense beyond a reasonable doubt. *Id.* § 2-a; *Wishert*, 654 S.W.3d at 331; *see also Buxton*, 526 S.W.3d at 688 n.4 (noting that Rules 413 and 414 of the Federal Rules of Evidence, which have been repeatedly held to be constitutional, do not contain this procedural safeguard). And Section 2(b) remains subject to the Rule 403 balancing test, which permits the trial court to exclude the extraneous evidence if it determines that the probative value of the proffered evidence is substantially outweighed by the danger of unfair prejudice. *See Belcher*, 474 S.W.3d at 847; *see also United States v. LeMay*, 260 F.3d 1018, 1026 (9th Cir. 2001) (holding that if the protections of Rule 403 remain in place, the right to a fair trial remains adequately safeguarded even though Rule 414 of the Federal Rules of Evidence permits the admission of character propensity evidence). Thus, and contrary to Appellant's assertions, Article 38.37, Section 2(b) does not reduce the State's burden

of proof or invert Appellant's presumption of innocence. *See, e.g.*, *Caston*, 549 S.W.3d at 611; *Torres*, 2021 WL 3013307, at *8.

Therefore, we conclude, as our sister courts have, that Article 38.37, Section 2(b) does not violate due process and is facially constitutional. *See, e.g.*, *Belcher*, 474 S.W.3d at 848; *Harris*, 475 S.W.3d at 403.

C. *As-Applied Challenge*

Appellant further contends that Article 38.37, Section 2(b) is unconstitutional as applied to him because there is nothing in the record that the extraneous evidence (1) would rebut any defensive theory upon which he relied, or (2) has any relevance apart from establishing character conformity. But, as we have explained, these reasons are not unconstitutional "as-applied" in the context of an offense involving the sexual abuse of a child, the purpose and scope for which Article 38.37, Section 2(b) was specifically enacted to address. *See Deggs v. State*, 646 S.W.3d 916, 922 (Tex. App.—Waco 2022, pet. ref'd) (holding that extraneous evidence is admissible for any relevant purpose under Article 38.37, Section 2(b), including to show a defendant's propensity to act in conformity with his character, and also rejecting an as-applied challenge to Article 38.37, Section 2(b)); *see also Wishert*, 654 S.W.3d at 333 (observing that "[t]he admissibility of a defendant's commission of separate, similar offenses against a minor child that are sexual in nature is precisely the purpose and scope of what Article 38.37, Section 2(b) encompasses"); *Harris*, 475 S.W.3d at 403 (holding that the legislature chose to create another exception to the prohibition of admitting evidence of extraneous offenses when it enacted Article 38.37, Section 2(b)).

There is nothing in the record that shows that the statute was applied to Appellant in an unconstitutional manner; rather, its application was consistent with

its unambiguous intent. *Wishert*, 654 S.W.3d at 333; *Deggs*, 646 S.W.3d at 922. Therefore, we conclude that Article 38.37, Section 2(b) is not unconstitutional as applied to Appellant.

Accordingly, we overrule Appellant's first issue.

D. *Evidentiary Challenge – Rule 403*

In his second issue, Appellant contends that the trial court abused its discretion when it admitted the complained-of extraneous evidence pursuant to Article 38.37, Section 2(b), and that this abuse of discretion constitutes harmful error.

When evidence of a defendant's extraneous acts is determined to be relevant and admissible under Article 38.37, Section 2(b), this evidence may nonetheless be subject to exclusion under Rule 403 if a proper objection or request is presented to the trial court. *Wishert*, 654 S.W.3d at 331; *see* TEX. R. EVID. 403. Rule 403 provides that a trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. *Gonzalez v. State*, 544 S.W.3d 363, 371–72 (Tex. Crim. App. 2018) (citing TEX. R. EVID. 403).

Because Rule 403 favors the admissibility of relevant evidence, it is presumed that relevant evidence will be "more probative than prejudicial." *Wishert*, 654 S.W.3d at 333 (citing *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002)). The intent of Rule 403 is not to exclude all evidence that tends to prejudice the defendant's case. *Id.* (citing *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010)). Rather, the rule only prohibits the admission of evidence that is *unfairly* prejudicial and influences the jury to decide an issue on an improper basis. *Id.*; *see Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002); *Montgomery v. State*,

15

810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on reh'g); *Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd).

Given that evidence of other acts of sexual abuse committed against children is especially probative of a defendant's propensity to sexually assault them, the Rule 403 balancing analysis normally will not favor the exclusion of such evidence. *Wishert*, 654 S.W.3d at 333 (citing *Caston*, 549 S.W.3d at 612); *Alvarez v. State*, 491 S.W.3d 362, 371 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). Granted, we recognize that "all evidence against a defendant is . . . designed to be prejudicial." *Wishert*, 654 S.W.3d at 333 (quoting *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013)). However, because evidence of extraneous acts of sexual abuse against children will nearly always be prejudicial, Rule 403 only protects a criminal defendant from *unfair* prejudice, not all prejudice. *Wishert*, 654 S.W.3d at 334; *see Parker v. State*, No. 03-24-00298-CR, 2026 WL 450704, at *5 (Tex. App.—Austin Feb. 18, 2026, no pet.) (mem. op., not designated for publication) (stating that the evidence, although prejudicial, was not unfairly so, given that the case was "a 'he said, she said' case—the exact kind [that was] contemplated by the legislature when it enacted article 38.37").

In reviewing a trial court's Rule 403 determination, we "measure the trial court's ruling against the relevant criteria by which a Rule 403 decision is made" by considering:

> (1) how compellingly the extraneous evidence serves to make a fact of consequence more or less probable; (2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way"; (3) the time needed to develop the evidence; [and] (4) the force of the proponent's need for this evidence to prove a fact of consequence.

*Perkins v. State*, 664 S.W.3d 209, 217 (Tex. Crim. App. 2022) (quoting *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999)); *Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019); *see Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

1. *The Extraneous Evidence is Compelling and Makes a Fact of Consequence More Probable*

Appellant acknowledges that "evidence of prior sexual abuse of children is especially probative of a defendant's propensity to sexually assault [them], thus [more] often than not, the [R]ule 403 balancing test will not exclude evidence of any prior sexual assaults of children." We agree. *See Wishert*, 654 S.W.3d at 330 (Such evidence is admissible as proof of the defendant's character and propensity to act in conformity with such character, when the indicted offense concerns certain sexual offenses against a child.). Moreover, Article 38.37, Section 2(b) expressly authorizes the admission of this type of evidence "for any bearing the evidence has on relevant matters." CRIM. PROC. art. 38.37, § 2(b); *see Wishert*, 654 S.W.3d at 330 n.1 (collecting cases).

Here, the extraneous-offense evidence was highly probative of Appellant's propensity to sexually abuse children, carried a low likelihood of unfair prejudice, and bore on a crucial issue: whether Appellant had a sexual interest in young male children within his immediate family or from a household that treated him like family. *See Torres*, 2021 WL 3013307, at *6 ("[T]he testimony was particularly probative to show Torres's propensity to commit sexual offenses against children who are members of his family or of a family of close friends who treat him as if he is a member of their family."); *Parker*, 2026 WL 450704, at *2 ("[T]he extraneous-offense evidence bore on a subject of genuine controversy—whether Parker had a sexual interest in children."); *see also Montgomery*, 810 S.W.2d at 390 (explaining

that the probative value of evidence "is often, although by no means invariably, a function of the similarity of the extraneous transaction to the charged offense").

As we said in *Wishert*, Article 38.37, Section 2(b) was designed to allow for the admissibility of a defendant's other, similar offenses that he committed against minor children that are "sexual in nature."  654 S.W.3d at 333.  The extraneous evidence admitted by the trial court tended to (1) make a fact of consequence more probable, and (2) show Appellant's motive, opportunity, and intent to commit other, similar incidents of sexually abusive conduct against male children.  Further, beyond the typical permissible factors, this evidence was also admissible to show the character of Appellant and to prove that he acted in conformity with that character. CRIM. PROC. art. 38.37, § 2(b).

Therefore, we conclude that this factor weighs in favor of admission.

2. *The Evidence had a Low Potential to Impress the Jury in Some Irrational, Yet Indelible Way*

Appellant contends that the extraneous-offense evidence was inherently inflammatory and prejudicial, to such a degree that its admission instantly inverted the presumption of innocence, reduced the State's burden of proof, and permitted the jury to find him guilty of the charged offense based solely on his association with having committed other crimes or for being a child molester generally.  Most jurors, he asserts, presume the veracity of extraneous-offense evidence, that the use of such evidence is for no reason other than to inflame the jury, and that the jury will therefore always convict the defendant for being a child molester, rather than because they concluded that the State proved the defendant's guilt beyond a reasonable doubt.

Extraneous-offense evidence of sexually related misconduct committed against children is inherently prejudicial and naturally inflammatory, but Rule 403

only provides for the exclusion of this type of evidence in cases such as this when it is found to be *unfairly* prejudicial, not merely prejudicial. *See, e.g.*, *Wishert*, 654 S.W.3d at 333; *Parker*, 2026 WL 450704, at *2; *Torres*, 2021 WL 3013307, at *6. And, although such evidence could "encourage a decision on an improper basis by arousing the jury's sympathy or hostility without regard to the logical probative force of the evidence or distract the jury from the main issue in the case," to be excluded, this evidence must do so in a manner that substantially outweighs the probative value of that evidence. *Parker*, 2026 WL 450704, at *2 (citing *Valadez v. State*, 663 S.W.3d 133, 142 (Tex. Crim. App. 2022)).

In this case, there are numerous and striking similarities in the allegations that pertain to the indicted offense and the extraneous offenses—namely, that Appellant sexually abused G.T. and K.N. in a bedroom that he shared with each of them for one night and while the children were in bed. *See, e.g.*, *Parker*, 2026 WL 450704, at *2; *Bonnet v. State*, No. 01-23-00086-CR, 2025 WL 554198, at *4 (Tex. App.—Houston [1st Dist.] Feb. 20, 2025, pet. ref'd) (mem. op., not designated for publication) ("[A]lthough certain aspects of the charged offense in this case may have differed from the extraneous sexual offenses, there were significant similarities."); *Love v. State*, 706 S.W.3d 584, 614 (Tex. App.—Austin 2024, pet. ref'd) ("The extraneous offenses committed by Love against Turner were similar in kind, intensity, and frequency to his charged conduct.").

G.T. described that Appellant touched his genitals over his clothes for about fifteen seconds, whereas K.N. testified that Appellant touched him sexually before sexually assaulting him by inserting his penis into K.N.'s anus. K.N. was twelve and G.T. was fifteen when Appellant sexually abused them. Both children knew Appellant as either a family member or a family friend, and Appellant stayed in their

homes. And both offenses occurred in a bedroom, on a bed, with the bedroom door open and potential witnesses nearby. These two offenses alone demonstrate a clear pattern of behavior that is representative of Appellant's propensity to commit acts of sexual abuse against children. *See, e.g.*, *Bonnet*, 2025 WL 554198, at *4; *Torres*, 2021 WL 3013307, at *6 (the prejudicial nature of the testimony was particularly probative to show Torres's propensity to commit sexual offenses against children).

Nothing in the record suggests that this extraneous-offense evidence confused or distracted the jury, was given undue weight, or influenced the jury to decide the case on an improper basis. *See Belcher*, 474 S.W.3d at 848 (noting that even though the extraneous sexual offense evidence involving another child was "more repugnant and inflammatory than the offense alleged against" the named complainant, the trial court did not violate Rule 403 by admitting the evidence); *Broadus v. State*, No. 03-24-00134-CR, 2026 WL 404675, at *7 (Tex. App.—Austin Feb. 13, 2026, no pet.) (mem. op., not designated for publication) (holding that the admission of extraneous sexual offense allegations, which could be seen as more egregious than the charged offense, was not unfairly prejudicial).

Moreover, we note that the trial court included a limiting instruction in its guilt/innocence charge that the jury was not to consider the extraneous-offense evidence for any purpose unless it found, beyond a reasonable doubt, that Appellant had committed those offenses. The instruction also advised the jury that, if they did consider the extraneous-offense evidence, to be mindful that Appellant was not on trial for any offense not alleged in the indictment and that, to find Appellant guilty, they could only do so if they were satisfied that the State had proved all elements of the *indicted offense* beyond a reasonable doubt. We presume that a jury follows a trial court's instructions regarding the consideration of evidence, and its instruction

20

here mitigated any potential harm or improper consideration of this evidence. *See Wishert*, 654 S.W.3d at 334 (citing *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009)); *Luna v. State*, No. 10-21-00198-CR, 2022 WL 3269110, at \*5 (Tex. App.—Waco Aug. 10, 2022, no pet.) (citing *Resendiz v. State*, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003)); *Barron*, 630 S.W.3d at 412–13.

Therefore, we conclude that this factor weighs in favor of admission.

### 3. *The Time Needed to Develop the Evidence Was Significant*

Appellant does not offer argument addressing this aspect of the Rule 403 balancing analysis. This factor looks to the time the proponent needs to develop the evidence during which the jury might be distracted from consideration of the indicted offense. *State v. Mechler*, 153 S.W.3d 435, 441 (Tex. Crim. App. 2005). Courts generally agree that where the presentation of extraneous-offense evidence consumes a significant portion of the trial, this factor will weigh in favor of exclusion. *See James v. State*, 623 S.W.3d 533, 550–51 (Tex. App.—Fort Worth 2021, no pet.); *Newton v. State*, 301 S.W.3d 315, 321 (Tex. App.—Waco 2009, pet. ref'd).

The State's case-in-chief focused heavily on Appellant's extraneous misconduct. *See Joseph v. State*, No. 14-25-00062-CR, 2026 WL 805756, at \*4 (Tex. App.—Houston [14th Dist.] Mar. 24, 2026, no pet. h.) ("[M]ost of the trial focused on the extraneous sexual assaults . . . the prosecution called on not just the complainant, but also his mother, his grandmother, a sheriff's deputy, a SANE nurse, and a forensic analyst."). By our count, the reporter's record shows that of the 221 pages that are dedicated to the State's development of evidence at trial, 152 pages concerns the presentation of extraneous-offense evidence, while only 80 pages pertain to direct evidence of the indicted offense. *See Lane v. State*, 933 S.W.2d

504, 520 (Tex. Crim. App. 1996) (measuring the ratio of trial testimony dedicated to extraneous-offense evidence); *Broadus*, 2026 WL 404675, at *7 (measuring the reporter's record pages in evaluating this factor).

Therefore, we conclude that this factor weighs in favor of exclusion. *See James*, 623 S.W.3d at 550–51; *Newton*, 301 S.W.3d at 321; *see also Joseph*, 2026 WL 805756, at *4.

### 4. *The State's Need for the Evidence to Prove a Fact of Consequence was High*

Prosecutions that involve sexual offenses against children are often "he said, she said" scenarios; that is, the jury is called upon to decide the case solely upon two completely different versions of events, unaided by tangible evidence. *See Parker*, 2026 WL 450704, at *4. In such circumstances, where the child victim's credibility becomes the focal issue in the case, Rule 403 exclusions should be used "sparingly." *See id.* (quoting *Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009)); *Wishert*, 654 S.W.3d at 334 ("The State's need for presenting evidence of similar incidences of sexual abuse committed by [the appellant] against his other children . . . when they were minors was high and extremely important to the State's goal to establish the truthfulness of R.W.'s testimony that [the appellant] had repeatedly sexually abused her.").[3]

---

[3] *See, e.g., Torres*, 2021 WL 3013307, at *5 ("[T]he State's need for the evidence was great as there was no third-party eyewitness or physical evidence corroborating Z.S's account . . . [and] Z.S.'s credibility was integral to the State's case."); *Caston*, 549 S.W.3d at 612 ("Without S.C.'s testimony concerning similar acts that appellant committed against her in similar circumstances, 'the State's case would have basically come down to' T.H's word against appellant's.") (quoting *Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet. ref'd)); *Belcher*, 474 S.W.3d at 848 (stating that H.C.'s credibility was clearly the focal issue in the case when there was no third-party eyewitness or physical evidence supporting her accusation and her mother initially doubted her accusation).

Such is the case here.  There was no physical evidence presented to show that Appellant committed these sexual offenses.  L.B. testified that she could see into the children's bedroom from her bedroom door and that she watched Appellant walk into the children's bedroom and climb onto the top bunk.  The defense proposed a different version of events—that Appellant did not touch G.T. or K.N. in a sexual manner for the purpose of his own sexual gratification—which is completely contrary to G.T.'s and K.N.'s accounts.  Further, as is often the circumstance, the direct evidence of the indicted offense was provided almost exclusively through G.T.'s testimony.  Thus, the State's need to present extraneous evidence of the incident involving K.N. was great and extremely important to its goal to establish the truthfulness of G.T.'s testimony.

Because G.T.'s credibility was the focal issue in this case, and the State's need for the use of the extraneous evidence was great, we conclude that this factor weighs in favor of admission.  *See Wishert*, 654 S.W.3d at 334; *Caston*, 549 S.W.3d at 612; *Belcher*, 474 S.W.3d at 848; *Parker*, 2026 WL 450704, at \*4; *Torres*, 2021 WL 3013307, at \*5.

### 5. *Consideration of all Balancing Factors*

It has been said that Rule 403 contemplates the exclusion of evidence only when there is a "clear disparity" between the proffered evidence's prejudice and its probative value.  *Hammer*, 296 S.W.3d at 568 (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)).  After measuring the trial court's ruling against the relevant criteria, we conclude that there is no "clear disparity between the degree of prejudice of the offered evidence and its probative value."  *Parker*, 2026 WL 450704, at \*5 (quoting *Conner*, 67 S.W.3d at 202).  The admission of the extraneous-offense evidence, while inherently prejudicial, "was not unfairly so, given that the

case was a 'he said, she said' case—the exact kind contemplated by the legislature when it enacted [A]rticle 38.37." *Id.* (citing *Bradshaw v. State*, 466 S.W.3d 875, 883–84 (Tex. App.—Texarkana 2015, pet. ref'd)).

Therefore, considering the standard of review that we must employ, we hold that the trial court did not abuse its discretion when it admitted the challenged extraneous-offense evidence. *See Joseph*, 2026 WL 805756, at *4; *Parker*, 2026 WL 450704, at *4.

Accordingly, we overrule Appellant's second issue.

## IV.  *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


May 21, 2026

Publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.